**Carlton Amos CRIDER, Bankrupt, Appellant,**

v.

**W. Bascom JORDAN, Trustee, Appellee.**

No. 7603.

United States Court of Appeals
Fourth Circuit.

Submitted on Briefs April 11, 1958.

Decided May 24, 1958.

T. Ryland Dodson, Danville, Va., and Joseph Whitehead, Jr., Chatham, Va., on brief, for appellant.

Stuart L. Craig, Danville, Va., on brief, for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and THOMSEN, District Judge.

SOPER, Circuit Judge.

This appeal is taken from an order of the District Court which affirmed an order of the Referee denying a discharge in bankruptcy to Carlton Amos Crider under Section 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, on the ground that he had failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained.

The findings of fact of the Referee, which are not disputed, may be summarized as follows:

Crider, who was formerly a cattle dealer, had been engaged in the business of road construction at Chatham, Virginia for two years prior to bankruptcy. He had defaulted upon certain payment and performance bonds on which the Glens Falls Insurance Company, the insurer and the objecting creditor in this case, had been obliged to pay a sum in excess of $76,000. Crider kept a set of books which had been prepared for him by a firm of certified public accountants and his wife made the book entries from information furnished by him and his job superintendent. One of the entries on the books disclosed a loan of $10,000 by Crider to his brother.

In the summer of 1956 Crider was not making satisfactory progress in his road work and progress payments were being made subject to the control of the surety. He became extremely nervous so that he required the care of a physician. He began to gamble on a large scale, apparently for the purpose of improving his financial condition. He usually carried on his person $5,000, a habit he had developed as a cattle dealer. During this summer he lost between $1,400 and $1,600 on several business trips to Richmond, Virginia. He then decided to go to

Las Vegas, and got together large sums of money in addition to the $5,000 for the trip. He collected the $10,000 which his brother owed him, in two sums of $6,000 and $4,000; but no entries of the payments were made on his books. According to the testimony, the money was paid in cash although the brother maintained a checking account.

On August 2, 1956, Crider cashed a check for $15,000 on his business checking account and placed the money in a deep freeze at his home. About the same time he and his wife borrowed $4,000 secured by a deed of trust on the house. After spending a week at Virginia Beach, where he lost $400 gambling, he and his wife and child went to Las Vegas carrying $34,000 in cash. According to his testimony, he spent eight or nine days at the resort, during which time he visited twenty gambling establishments and lost $25,000; but he kept no records and retained no memory of the details of his losses. He said that when he left Las Vegas he had about $8,500 left, which he was afraid to carry on his person; so he put $8,100 in a soap dish and placed it in one of his six pieces of baggage. This piece was the only one missing when he claimed his baggage on his arrival at Greensboro Airport upon his return. He was unable at the hearing before the Referee to furnish an account of the details of his losses. During his absence the business was obliged to borrow money to meet the payroll.

His defense in this discharge proceeding is that his failure to keep records did not relate to his business transactions, but merely to his personal expenses and gambling losses, which are not within the terms of the statute. The court below considered this excuse but rejected it. In our opinion this conclusion was correct, since the explanation is clearly insufficient to meet the requirements of Section 14, sub. c of the statute, that where reasonable grounds for refusing a discharge are shown by an objector, the burden of disproving the charge rests upon the bankrupt.

It is not necessary in support of an objection to a discharge to prove an intent on the part of the bankrupt to conceal his financial condition. It is sufficient to show his failure, without reasonable grounds, to keep records from which his financial condition and his business transactions may be ascertained. In re Underhill, 2 Cir., 82 F.2d 258 and In re Schecter, D.C.E.D.N.Y., 43 F. Supp. 1014. The defense that is offered in this case will not hold water. The transactions for which no records were kept were not personal matters totally disconnected to the bankrupt's business. On the contrary, substantial sums were involved which constituted business assets. The books showed the account receivable for $10,000 due by Crider's brother, and the evidence shows that this money was repaid in two installments and pocketed by Crider, without any entry on the books of the business. In other words, $10,000 of assets disappeared without any record whatsoever being made on the books and without any explanation of its disposition, except the uncertain testimony of losses in games of chance. Furthermore, $15,000 of the bank deposits of the business were withdrawn with no record of its disposition other than the entry that it had been taken from the assets of the business, without any explanation except that it had disappeared in gambling transactions of which the bankrupt had no records and no definite recollection.

It has been held in the Second Circuit that a discharge should be denied to a salaried employee who bankrupts himself by heavy losses in all sorts of gambling of which he kept no records so that it was impossible to take action under a New York statute which authorizes the loser of a bet to recover money paid to the winner. A similar statutory provision is found in the Code of Virginia (1950), Sections 11–15; but we need not base the decision on this point. It is sufficient to say that large sums of money were withdrawn by the bankrupt from his business without any adequate record

of its disposition. We find nothing to the contrary in the following cases cited by the bankrupt. In re Wilde, D.C.S.D. N.Y., 48 F.Supp. 230; Roberts v. W. P. Ford & Son, 4 Cir., 169 F.2d 151; Matter of Gentile, D.C.W.D.Ky., 123 F.Supp. 723; In re La Belle, D.C.S.D.Cal., 112 F. Supp. 147.

Affirmed.