In the Matter of Herman DAVIS, Bankrupt.

No. 61–B–921.

United States District Court
E. D. New York.

Sept. 20, 1962.

Jacob Frummer, Brooklyn, N. Y., for bankrupt.

Michael Friedman, New York City, for objecting creditor, Brooklyn Postal Employees Credit Union.

BARTELS, District Judge.

Petition by the bankrupt for review of an order of the Referee in Bankruptcy denying the bankrupt a discharge on the grounds that the bankrupt failed to keep books and records and to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities.[1]

On November 16, 1961 the bankrupt, then an employee of the Post Office Department, filed a voluntary petition in bankruptcy, the schedules annexed to which listed no assets and unsecured liabilities in the sum of $25,871.16. Hearings conducted by the Referee revealed that the bankrupt had gambled away not only his salary (approximately $9,000 per annum) but also sums borrowed from the Brooklyn Postal Employees Credit Union, commercial lenders, friends, relatives and fellow employees. In fact, the bankrupt stated that he lost approximately $12,750 gambling at local New York race tracks during a six-month period in the year immediately preceding the filing of his voluntary petition. He admittedly maintained no records of the dates or amounts of his wagers, the tracks at which he wagered or the horses on which he wagered. The Referee found that gambling having become a "major activity" of the bankrupt during 1961 he was required to keep complete records of his gambling transactions, and that the bankrupt had failed to explain the loss of assets satisfactorily; accordingly, he denied the bankrupt a discharge.

Louis J. Castellano, Brooklyn, N. Y., referee in bankruptcy.

In his decision the Referee relied upon Klein v. Morris Plan Industrial

1. Section 14, sub. c of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c) provides in part as follows:
"The court shall grant the discharge unless satisfied that the bankrupt has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case;"
and further provides:
"(7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities * * *".

Bank, 2 Cir., 1942, 132 F.2d 809 (144 A.L.R. 1278); Gaudet v. Cowen, 5 Cir., 1961, 297 F.2d 227, and Crider v. Jordan, 4 Cir., 1958, 255 F.2d 378. While these cases do not square exactly with the case at bar, they do enunciate the applicable principles. In Klein the court pointed out that the failure of the bankrupt to keep records of his gambling activities deprived his estate of the opportunity to recoup his gambling losses, pursuant to New York Penal Law, McKinney's Consol.Laws, c. 40 § 994. Although it apparently rested its decision upon this ground, it added that " * * * we can hardly take judicial notice of what the practice is among habitual gamblers as to keeping records of their losses." (Id. at 811 of 132 F.2d) In Gaudet the bankrupt lost his funds not only through gambling but also through real estate speculation and other activities; nevertheless the court denied the discharge, stating that the bankrupt had "failed to make such disclosure as is a condition precedent to discharge". (Id. at 228 of 297 F.2d) In Crider the bankrupt sustained substantial gambling losses and also certain casualty and other losses with respect to which he kept no records, claiming that they did not relate to his business transactions. The court rejected this defense, remarking that these transactions were not personal matters disconnected from the bankrupt's business, and particularly indicating that its decision was not based upon the Virginia recoupment statute which was similar to the New York statute relied upon in Klein. From these cases there emerges the principle that the loss of funds through gambling does not automatically excuse the bankrupt from keeping books or records. When gambling has developed into a major financial operation or occupation of the bankrupt, he must justify his failure to keep books and satisfactorily explain his loss of assets. He cannot escape upon the ground that they are personal expenses.

The bankrupt relies upon In re Wilde, D.C.N.Y.1942, 48 F.Supp. 230, wherein a discharge was granted to one who gambled away his assets and who kept no books or records. In that case the referee, after going into the matter in detail and hearing the bankrupt and corroborating witnesses, found that the bankrupt had fully and satisfactorily accounted for his gambling losses; the district court consequently declined to hold such finding "clearly erroneous". In the present case, however, the Referee was not so satisfied. The case, therefore, is no authority for the bankrupt's contention that a person who gambles does not, as a matter of law, have to keep books and records.

■■ Section 14, sub. c of the Bankruptcy Act (note 1, supra) requires a bankrupt to maintain books and records of his financial condition or in lieu thereof to explain satisfactorily his failure to do so. The Referee was correct in holding that gambling had, at least during 1961, become the bankrupt's major activity[2], and that he was subject to the 14, sub. c requirement that he keep books and records. The bankrupt having failed to keep such books and records, the issue remains whether or not the bankrupt has given a satisfactory explanation for such failure. Unlike In re Wilde, supra, the bankrupt offered no corroborating testimony or details as to his losses; there was no explanation for his failure to keep books, records or evidence of his losses except that they were gambling losses. This explanation by itself is insufficient. A perusal of the record reveals that even though he testified that he kept a continuous account of loans and payments, the exhibit he produced as such record was a schedule apparently prepared no earlier than October, 1961, one month before the filing of his petition. "The purpose and intent of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. His books should indicate an honest effort to reflect his entire business." In re Schechter, D.C.N.Y.1942, 43 F.Supp. 1014.

---

2. During that year his gambling losses were more than twice his take home pay.

Under the circumstances, the Referee acted reasonably and the Court would not be justified in reversing his determination as "clearly erroneous".

Settle order within ten (10) days on two (2) days' notice.