In the Matter of Louis MORSE, Bankrupt.
No. 94.

United States District Court
W. D. Arkansas,
Hot Springs Division.
Jan. 19, 1965.

B. W. Thomas, Hot Springs, Ark., for petitioner.

R. Scott Campbell, Hot Springs, Ark., for objecting creditor.

JOHN E. MILLER, Chief Judge.

There is before the court the petition of the bankrupt, Louis Morse, for review of an order of the Referee in Bankruptcy entered October 27, 1964, denying the discharge of the bankrupt.

On May 13, 1965, the bankrupt filed his voluntary Debtor's Petition which was referred to the Referee on the same date.

In paragraphs 2 and 3 of the petition for review, the following allegations appear:

"That the Bankrupt in his Petition and on the stand testified that in the two years immediately preceding the filing of the Bankruptcy herein, he had been employed as an auctioneer for Lord's Art Gallery of Hot Springs and had earned salaries totaling approximately Sixty Thousand Dollars ($60,000) and has lost said monies gambling.

"It is undisputed that said monies were lost by gambling at the Southern Club and the Vapors which, during that time, had operated gambling casinos in the City of Hot Springs, Arkansas."

The bankrupt further alleged in paragraph 6:

" * * * that he kept no records of his losses; that he had gambled some monies in the ninety (90) days prior to filing his Petition for Bankruptcy."

In paragraph 8 he alleged:

" * * * the fact that monies are lost by gambling and the bankrupt cannot pay his creditors of itself does not warrant the refusal to discharge in bankruptcy. It is only where the bankrupt's financial condition cannot be ascertained that the failure to keep records will prevent the discharge. In the present case, the record reflects that the Bankrupt's financial condition was unquestioned and was so found by the Referee."

In paragraph 10 he alleged:

"The petitioner would like to point out at this point that he is a wage earner and that the keeping of records of gambling losses is not the practice of gamblers and was, therefore, not compulsory upon this petitioner in order to receive his discharge in bankruptcy."

Prior to the filing of the petition for review and on September 2, 1964, a judgment creditor of petitioner filed objection to the discharge, and alleged:

"1. That petitioner failed to keep books of account or records from which his financial condition and business and gambling transactions might be ascertained; that petitioner has admitted this both in his petition and in his examination in open court.

"2. That petitioner has committed an offense punishable by imprisonment as provided under Section 152 of Title 18 of the United States Code Annotated in that he admitted in open court that he owns household goods, furniture, household stores, wearing apparel and ornaments of the person of a value of more than $250.00, which is the value listed for same in his petition."

A hearing on the objection was held in Hot Springs, Arkansas, on October 23, 1964, at which the bankrupt appeared in person and by his attorney and the objecting creditor appeared by his attor-

ney. At the hearing the petitioner testified that he lost all his money gambling, "my salary, what I could borrow, everything I could get hold of, at the Southern and the Vapors. I still owe for my furniture." It appeared that the petitioner had not listed all of his creditors in his petition for adjudication, and the petitioner stated that he did not "list any of my personal friends, just the people I knew I couldn't pay." He further testified:

"A. I lost week in and week out, I have no record, lost up to the time they closed the gambling, and couldn't gamble any more. I gambled at the Southern and the Vapors—everyone knows me, they all know I lost everything. You can check with anyone.

"Q. Weren't these losses over four or five years?

"A. There is no way to establish exactly how much I lost. They all know I lost. I don't know dates and amounts."

On October 27, 1964, the Referee entered an order denying the discharge, in which he stated:

"In his petition in bankruptcy, the bankrupt stated that he was employed as an auctioneer at Loyd's (Lord's) Art Gallery at Hot Springs, where he had been so employed for four years, and during the two years immediately preceding the filing of the petition in bankruptcy herein, he had received $60,000.00 in income. The petition also reflects that the bankrupt lost all of this money at craps, and with approximately $30,000.00 being in cash during the last two years. The testimony is undisputed but that this money was lost by gambling at the Southern Club and The Vapors, and that a substantial portion of the money lost occurred within ninety days prior to bankruptcy. It was admitted that the bankrupt maintained no record of his losses."

The bankrupt, through his attorney, has submitted a memorandum brief in support of the petition for review. The court has considered the contentions of the petitioner and has examined the authorities cited and relied upon to sustain his contentions that the Referee erred in not granting the discharge.

The petitioner contends that if his acts were for the purpose of defrauding creditors, then there might be some justification for the Referee's ruling, and that there should be some evidence to sustain the Referee's ruling before he can arbitrarily deny a bankrupt his discharge. He further stated:

"If this were not so, all of the laws relative to bankruptcy can be disregarded if the Referee is so of a mind and refuses to deny any person a discharge by merely saying that he does not believe the bankrupt.

"Petitioner is of the opinion while any Court or arm thereof should have a wide latitude in discretion but that any ruling they make must be predicated upon evidence adduced before that Court; otherwise, it opens the door to the litigants' being subjected to many vices including personal, petty peeves and prejudices of the man sitting as a judge or as an arm of a Court, being human and trying as he might, so many instances would arise resulting in the miscarriage of justice such as your Petitioner feels happened in this case and might happen in numerous cases that this Petitioner feels that a Referee in Bankruptcy must have a reasonable ground other than the imaginary belief upon which to deny the bankruptcy and respectfully asks that this court reverse the Referee and direct that Petitioner be given his discharge in bankruptcy."

Title 11, U.S.C. § 32, sub. c, (1964 Supp.), provides:

"The court shall grant the discharge unless satisfied that the

bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18; or (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; * * *; or (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: * * *."

■ The court is of the opinion that specification (2) of the objection to the discharge is not sufficient to justify a consideration of the same. 1 Collier on Bankruptcy, Sec. 14–07(2), 14th Ed. See, also, In Re Leach, (W.D.Ark.1960) 197 F.Supp. 32.

There is some indication that the Referee may have considered the seventh ground for refusing to grant a discharge, in that the Referee stated:

"Having had opportunity to observe the bankrupt while testifying, and when viewed within the context of this case, I feel compelled to state that the bankrupt's credibility as a witness left much to be desired, and his testimony was unimpressive."

■■ A Referee does not have the right to base a refusal to grant a discharge upon a statutory ground unless that ground is incorporated in the specifications of objections to the granting of the discharge. However, specification (1) relative to the failure of the petitioner to keep books of accounts or records from which his financial condition and business and gambling transactions might be ascertained is sufficient to authorize the Referee to consider whether the petitioner was engaged in a business that required the keeping of books and whether the petitioner has honestly revealed to the court and to the creditors all of his financial transactions.

The petitioner contends that under the facts in the case the discharge should have been granted, since he was not engaged in a business that requires the operator to keep books of account, and especially is that true in the instant case since none of the debts for which the petitioner sought a discharge was incurred as a result of the business of the petitioner.

■ In Gross v. Fidelity & Deposit Company of Maryland, (8 Cir. 1962) 302 F.2d 338, the court at page 340 said:

"Before proceeding to further consideration of the issue before us, it is pertinent to observe that statutory provisions regulating discharges are remedial in nature; they should be construed liberally with the purpose of carrying into effect the legislative intent, and that the statutory grounds for opposing a discharge should not be extended by construction. Collier on Bankruptcy, 14th Ed., Vol. 1, § 14.02[3], p. 1256. Judicial recognition of this principle has been expressed with variations. Thus we stated in Becker v. Shields, 8 Cir., 237 F.2d 622, at p. 625: 'A bankrupt is entitled to a discharge unless the evidence clearly shows that he has committed an act which bars it. Farmers' Sav. Bank of Grimes, Iowa v. Allen, 8 Cir., 41 F.2d 208, 212.' In Dilworth v. Boothe, 5 Cir., 69 F.2d 621, at p. 624, the court observed: '(t)he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.' (Followed in Jones v. Gertz, 10 Cir., 121 F.2d 782, 784). Again, in Johnson v. Bockman, 10 Cir., 282 F.2d 544, 545:

"'It is settled law that the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., is to be liberally construed in favor of a bankrupt. A bankrupt is entitled to a discharge unless it clearly appears that he has committed some act which precludes his right thereto. And the

initial burden rests upon the one objecting to establish reasonable basis for believing that the bankrupt has committed an act or acts which prevent his discharge. But when a prima facie case has been made by the one objecting to the granting of the discharge, the burden shifts to the bankrupt to clear himself of the charge established by such prima facie case. Jones v. Gertz, 10 Cir., 121 F.2d 782; Dixon v. Lowe, 10 Cir., 177 F.2d 807; McMullin v. Todd, 10 Cir., 228 F.2d 139.' "

In the light of the foregoing principles, the court is satisfied from an examination and consideration of the record that the findings of the Referee were not clearly erroneous and should not be set aside. Gross v. Fidelity & Deposit Co. of Maryland, supra. See, also, General Order 37, p. 96, and General Order 47, p. 115, 11 U.S.C.

In In Re Gentile, (W.D.Ky.1952) 107 F.Supp. 476, at page 477, the court said:

" * * * I agree with the Referee's ruling that the fact that the bankrupt is engaged in gambling as his chief occupation does not operate as a bar to his discharge in bankruptcy. § 14, sub. c of the Act provides that the Court shall grant the discharge unless satisfied that the bankrupt has done any one of seven different acts, as therein specified. Having engaged in gambling, or being a 'bookie', or having violated the public policy of the state, are not included among the seven. The right to a discharge in bankruptcy is liberally construed. In re Newman, 6 Cir., 126 F.2d 336, 337. The Court is not authorized to enlarge the grounds specified in the statute. International Shoe Co. v. Kahn, 4 Cir., 22 F.2d 131, 133. It appears well settled that an application for discharge must be granted unless it appears that the bankrupt has committed one of the offenses specified in the Act as barring a discharge. In re Hughes, 2 Cir., 262 F. 500;

Bluthenthal v. Jones, 208 U.S. 64, 66, 28 S.Ct. 192, 52 L.Ed. 390; In re Masor, 7 Cir., 117 F.2d 368; Farmers Savings Bank of Grimes, Iowa v. Allen, 8 Cir., 41 F.2d 208, 212."

The case of Gaudet v. Cowen, (5 Cir. 1961) 297 F.2d 227, was a case where a voluntary bankrupt had been denied discharge by the Referee on objection of the Trustee under Title 11, U.S.C. § 32, sub. c (2), because of unjustified failure to keep books and records from which his financial condition and business transactions might be ascertained. The District Court denied the discharge, and the Court of Appeals, in affirming, stated at page 227:

"The financial posture of the Bankrupt centered around his employment as Chief Deputy Assessor of Jefferson Parish; real estate promoting, developing, and handling from which he received sums as large as Eighty Thousand Dollars on one transaction and from which he estimated receiving a total of Two Hundred Thousand Dollars in the four year period immediately preceding the hearing before the Referee; large scale gambling activities over many years from which the Bankrupt sustained losses of an estimated One Hundred Thirty Thousand Dollars in 1959 alone; and also a great number of borrowings from banks and individuals.

"The Bankrupt kept no books or records whatever on his gambling activities, or real estate operations save a few receipts from investors. He had no canceled checks, check stubs, bank statements, records of receipts or expenditures. He failed to make such disclosure as is a condition precedent to discharge. Cf. Matter of Underhill, 2 Cir., 1936, 82 F.2d 258; Crider v. Jordan, 4 Cir., 1958, 255 F.2d 378; and Klein v. Morris Plan Industrial Bank, 2 Cir., 1942, 132 F.2d 809, 144 A.L.R. 1278."

In the case of In Re Davis, (E.D.N.Y. 62) 208 F.Supp. 508, the bankrupt filed a petition for review of an order of

the Referee denying a discharge on the grounds that the bankrupt failed to keep books and records and to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities. The voluntary petition filed by the bankrupt listed no assets and unsecured liabilities in the sum of $25,871.16. In the instant case the petitioner listed liabilities of $16,325.00 with no assets that were not claimed as exempt, such as homestead, furniture, and wearing apparel. The Referee found in Davis that the bankrupt had gambled away not only his salary of approximately $9,000 per annum, but also sums borrowed from lending agencies; that the bankrupt had lost $12,750 gambling at local New York race tracks during a six-month period in the year immediately preceding the filing of his voluntary petition; that he maintained no records of the dates or amounts of his wagering, the tracks at which he wagered, or the horses on which he wagered. The Referee found "that gambling having become a major activity of the bankrupt during 1961 he was required to keep complete records of his gambling transactions, and that the bankrupt had failed to explain the loss of assets satisfactorily;" and accordingly he denied the bankrupt a discharge. The court, in reviewing the action of the Referee, after citing cases, said page 510:

> "When gambling has developed into a major financial operation or occupation of the bankrupt, he must justify his failure to keep books and satisfactorily explain his loss of assets. He cannot escape upon the ground that they are personal expenses."

The court also stated:

> "The Referee was correct in holding that gambling had, at least during 1961, become the bankrupt's major activity, and that he was subject to the 14, sub. c requirement that he keep books and records. The bankrupt having failed to keep such books and records, the issue remains whether or not the bankrupt has given a satisfactory explanation for

such failure. Unlike In re Wilde [D.C., 48 F.Supp. 230], supra, the bankrupt offered no corroborating testimony or details as to his losses; there was no explanation for his failure to keep books, records or evidence of his losses except that they were gambling losses. This explanation by itself is insufficient."

In Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915), the court beginning at page 554 of 236 U.S. at page 290 of 35 S.Ct. said:

> "It is the purpose of the bankrupt act to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. Wetmore v. Markoe, 196 U.S. 68, 77 [25 S.Ct. 172, 49 L.Ed. 390]; Zavelo v. Reeves, 227 U.S. 625, 629 [33 S. Ct. 365, 57 L.Ed. 676]; Burlingham v. Crouse, 228 U.S. 459, 473 [33 S. Ct. 564, 57 L.Ed. 920]. And nothing is better settled than that statutes should be sensibly construed, with a view to effectuating the legislative intent. Lau Ow Bew v. United States, 144 U.S. 47, 59 [12 S.Ct. 517, 36 L.Ed. 340]; Re Chapman, 166 U.S. 661, 667 [17 S.Ct. 677, 41 L.Ed. 1154]."

The general rule is that when an application for discharge is made by a bankrupt in the District Court, the Judge of that court is, by the terms of the statute, bound to grant it unless the bankrupt "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then

the burden of proving that he has not committed any of such acts shall be upon the bankrupt." 11 U.S.C. § 32, sub. c, sub. (7).

The Referee in his certificate referred to Ark.Stat.Ann. Sec. 34–1601 (1962 Repl.), which provides:

"Any person who shall lose any money or property, at any game or gambling device, or any bet or wager whatever, may recover the same by action (of debt, if for money, and if for property, by action of detinue or trover), against the person winning the same; but such suit shall be instituted within ninety [90] days after the paying over of the money or property so lost."

Section 34–1602 gives the right of action to creditors of such person but the remedy of creditors is the same as provided in the preceding section for the person losing. These statutes are generally applicable except with one exception and that is a loser may not recover losses on any turf race.

The Referee also found that a substantial portion of the bankrupt's alleged gambling losses occurred within ninety days of the filing of the petition in bankruptcy. That being true, the Trustee would be unable to recover losses for the benefit of the creditors even if the bankrupt had maintained the records of such losses because of the limitation contained in Sec. 34–1601.

In Crider v. Jordan, (4 Cir. 1958) 255 F.2d 378, the court at page 379 said:

"His defense in this discharge proceeding is that his failure to keep records did not relate to his business transactions, but merely to his personal expenses and gambling losses, which are not within the terms of the statute. The court below considered this excuse but rejected it. In our opinion this conclusion was correct, since the explanation is clearly insufficient to meet the requirements of Section 14, sub. c of the statute, that where reasonable grounds for refusing a discharge are shown by an objector, the burden of disproving the charge rests upon the bankrupt."

The Bankruptcy Act must be liberally construed in favor of the bankrupt. The statute, Sec. 14, sub. c of the Bankruptcy Act, 11 U.S.C. § 32, sub. c, does not by its terms definitely require everyone to keep books of account "from which his financial condition and business transactions might be ascertained." The right of the bankrupt to obtain a discharge is conditioned upon the performance by him of the requirements set forth in Section 14, sub. c, (1)–(7), inclusive. The court shall grant the discharge unless satisfied that the bankrupt has done or failed to do the acts set forth in subdivision c above referred to. The material requirement in the instant case is subdivision c (2) relative to his keeping or preservation of books of accounts or records.

None of the debts listed by the bankrupt are debts incurred in gambling. That is a business that is usually conducted on a cash basis, and to permit a person with an income of $60,000 during the two years preceding the filing of a voluntary petition in bankruptcy to be discharged from his ordinary debts on the ground that he is unable to pay because he had gambled away his assets, would be to place a stamp of approval upon such operations, and this the court is not prepared to do. Liberality of construction of the statute does not require a court to discharge a bankrupt of his debts upon the showing made by the bankrupt in this case.

The facts as found by the Referee and contained in the record are abundantly supported by the evidence. Therefore, an order is being entered today denying the petition for review and approving and confirming the order of the Referee denying the discharge.