In re Arnold Nmn TACKETT Sara Ruth Cunningham Tackett Debtors.

**FEDERAL DEPOSIT INSURANCE CORPORATION Plaintiff,**

v.

**Arnold TACKETT and Sara Ruth Cunningham Tackett Defendants.**

Bankruptcy No. 1–84–00241.
Adv. No. 1–85–0029.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 20, 1986.

---

Morton, Lewis, King & Krieg, M. Edward Owens, Jr., Rodney D. Ray, Knoxville, Tenn., for plaintiff.

Ray & North, P.C., Thomas E. Ray, Chattanooga, Tenn., Charles H. Child, Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The Federal Deposit Insurance Corporation (FDIC) objects to the discharge of the debtors pursuant to Sections 727(a)(2), (3), and (5), of Title 11, United States Code.[1] Trial was held July 10, 1986.

### I

The debtors Arnold and Sara Tackett are husband and wife. They are the parents of two minor children, ages seven and four.

Mr. Tackett attended Lincoln Memorial University, where he met C.H. Butcher, Jr., with whom he would become involved, some twenty years later, in numerous business ventures. Mr. Tackett graduated in 1961 with a degree in accounting. He has been a certified public accountant since 1969.

For several years following his graduation from college, Mr. Tackett was employed as an auditor in the office of the Comptroller of the State of Tennessee. His duties included auditing the financial records of various state government departments. Mr. Tackett left the Comptroller's office to accept a position with the Fiscal Review Committee, a state legislative committee charged with the financial oversight of various state institutions. Mr. Tackett was employed by the Committee as a financial analyst and research assistant. In 1974, Mr. Tackett became Assistant Treasurer of the State of Tennessee, the position he held until early 1980, when he and Mrs. Tackett moved to Knoxville, Tennessee.

Sara Tackett graduated from Southern College in 1964 with a degree in accounting. Mrs. Tackett has been a certified public accountant since 1972.

After graduating from college Mrs. Tackett was employed as an accountant by the Tennessee Department of Public Health, where she performed bookkeeping functions. When she left that job she worked as an auditor in the State Comptroller's Office. Mrs. Tackett left the Comptroller's office to become Director of Fiscal Services for the Department of Conservation of the State of Tennessee. Her duties in this position included oversight of accounting functions for the Department of Conservation. In approximately 1977, Mrs. Tackett was employed by the Fiscal Review Committee where she performed financial analysis and accounting services. In approximately 1978, she accepted a position as Director of Accounting for the Department of Finance and Administration of the State of Tennessee. Her duties included oversight of accounting services for a number of departments of state government. In early 1980, Mrs. Tackett moved to Knoxville with her husband.

The debtors moved to Knoxville in 1980 because Mr. Tackett had received an offer of employment from C.H. Butcher, Jr., who anticipated acquiring a manufacturing business he wanted Mr. Tackett to manage. Instead of managing the manufacturing business, Mr. Tackett became an assistant and consultant to Mr. Butcher. Mr. Tackett's duties included analyzing proposed business deals and investments from a fi-

---

1. Prior to trial, the court entered an agreed order dismissing FDIC's request for a determination of nondischargeability of its debt pursuant to 11 U.S.C.A. § 523(a)(2) (West 1979).

nancial standpoint for Mr. Butcher. In addition, Mr. Tackett talked with people with whom Mr. Butcher did not have time to meet.

After their arrival in Knoxville, the debtors became involved in numerous business ventures. Both held positions in a number of corporations. A description of Mr. Tackett's interest in, and the business of, four of these corporations follows:

*Southern Resources, Inc.*—Mr. Tackett became president of Southern Resources, Inc. in the spring of 1980 and served in that office until November 1981. Southern Resources invested in various assets, including bonds and the stock of banks and other corporations. Mr. Tackett managed the affairs of Southern Resources and made investments on behalf of the corporation. He apparently also guaranteed substantial debts of Southern Resources, Inc.

*Knox Federal Savings and Loan Association*—In November 1981, Mr. Tackett left Southern Resources and became president of Knox Federal Savings and Loan Association, a federally insured savings and loan association. According to Mr. Tackett, he was brought in as president of Knox Federal because it was in bad shape and the owners were looking for someone with experience and background in financial affairs to improve the association's prospects. Mr. Tackett served as president of Knox Federal until August 1983.

*Eagle Supply Company*—During 1981 and 1982 Mr. Tackett served as vice-president and as a director of Eagle Supply, in which he owned approximately 50% of the stock. This company was in the business of selling mining supplies.

*Mississippi Coast Properties, Inc.*—Mr. Tackett testified he did not believe he was, but that he could have been, a director of Mississippi Coast Properties. He was one of ten or fifteen shareholders in the corporation, which owned a hotel in Biloxi, Mississippi.

Beginning in 1980, Mrs. Tackett became involved in managing the financial interests of Mr. Butcher's wife, Shirley Butcher, and the Butchers' son, C.H. Butcher, III. Mrs. Tackett also had responsibility for the accounting services and the financial management of the C.H. Butcher, III, Trust, which held assets worth more than $1,000,000.00. In addition, Mrs. Tackett provided financial and accounting services for the following corporations:

*Design Plus, Inc.*—Shirley Butcher was president of Design Plus, which was an interior design service. Mrs. Tackett served as secretary-treasurer, oversaw the financial operation, and kept the books and records of the corporation.

*Office Trends, Inc.*—Shirley Butcher was president of Office Trends, and Mrs. Tackett served as secretary-treasurer. This corporation was in the business of selling office supplies. Mrs. Tackett's duties at Office Trends were identical to her duties at Design Plus.

*Red Gate Quarter Horses, Inc.*—C.H. Butcher, III was president of this corporation, and Mrs. Tackett was secretary-treasurer. The corporation owned show horses and operated a farm. Mrs. Tackett performed the same duties for Red Gate that she performed for Design Plus and Office Trends.

In addition to the aforementioned corporate interests, the debtors held ownership interests in a number of partnerships and other business ventures, including:

*Page Properties, Ltd.*—This limited partnership was formed in 1980 by the debtors for the purpose of acquiring and offering for rent improved real property. Mrs. Tackett was and is the sole general partner; Mr. Tackett was and is the sole limited partner. Page Properties, Ltd. owned an apartment complex and seven duplexes, all located in Hamilton County, Tennessee. According to a financial statement prepared by one of the debtors and signed by Mrs. Tackett, as of July 31, 1982, the partnership's net worth was $1,887,188.00. As general partner of Page Properties, Mrs. Tackett signed promissory notes for which she is personally liable, including unsecured notes for hundreds of thousands of dollars payable to various failed banking

institutions, whose claims are now held by FDIC. The debtors kept the books and records of Page Properties, Ltd.

*East Tennessee Properties, Ltd.*—Mr. Tackett was the sole general partner and owned a 40 or 50% interest in this limited partnership, which bought real estate for investment purposes. Its holdings included a Carborundum plant and a warehouse in Knoxville, Tennessee. As general partner, Mr. Tackett signed notes for which he is personally liable, including unsecured notes for hundreds of thousands of dollars now held by FDIC. The debtors kept the books and records of East Tennessee Properties, Ltd.

*Equity Investors V, Ltd.*—Mr. Tackett was the sole general partner of this limited partnership. The limited partner was Lewis Howard, Trustee for the C.H. Butcher, III, Trust. This partnership owned bank stock and part of a development project at St. Simons Island, Georgia. As general partner, Mr. Tackett signed unsecured notes for which he is personally liable. For example, on June 30, 1982, Mr. Tackett executed a note for $100,000.00 payable to C & C Bank of Knox County, a bank which has since failed and whose claim is now asserted by FDIC. Mr. Tackett testified that the records of this partnership were kept by Mr. Ted Erck.

*Plaza 12 Silver Investments*—This is a name, representing an informal joint venture, given to a checking account used by Mrs. Tackett to trade in silver and commodities. The funds used for this trading originally were contributed by the debtors and C.H. Butcher, Jr. The name "Plaza 12 Silver Investments" was first used in October 1982. Prior to that time Mrs. Tackett traded in silver and commodities in her own name on behalf of herself, Mr. Tackett and Mr. Butcher. Millions of dollars worth of silver and commodities were traded by Mrs. Tackett under the name of Plaza 12. As of October 7, 1982, the net worth of Plaza 12 was $1,235,400.00, according to a financial statement signed by Mrs. Tackett. Mrs. Tackett also signed unsecured promissory notes, for which she is personally liable, on

behalf of Plaza 12. Mrs. Tackett kept the books and records of Plaza 12 Silver Investments.

*PPC Associates*—This was a partnership in which Page Properties, Ltd. was a general partner. This partnership owned a parcel of real property near the 1982 World's Fair site in Knoxville, Tennessee. As general partner of Page Properties, Ltd., a general partner in PPC, Sara Tackett signed at least one promissory note dated October 29, 1982, on behalf of PPC in the amount of $830,460.00. FDIC is the holder of this note.

The debtors also held interests in numerous other business ventures. Mrs. Tackett was a limited partner in Saxon Oil, an oil well drilling partnership which paid her a regular income. Mr. Tackett was a partner in Lick Fork Natural Resources, a partnership which owned land upon which coal was mined. Page Properties, Ltd. was also a limited partner in Rule Properties, Ltd., a limited partnership engaged in the construction business. The debtors also did business under the name "Hunley Properties," a name used for a checking account through which the debtors made various payments.

Through their business dealings the debtors amassed substantial assets and incurred sizeable liabilities. The debtors' June 30, 1981 financial statement, prepared by one of them and signed by Mr. Tackett, shows a net worth of $2,291,025.00. Their June 30, 1982 financial statement, showing a net worth of $3,874,261.00, lists real estate, most of it improved, with a reported value of $3,280,109.00 upon which mortgages of $213,600.00 were payable. The liabilities listed on the June 30, 1982 financial statement total $3,943,775.00. In addition, the debts of Page Properties, Ltd., for which Sara Tackett is personally liable, totaled $3,394,552.00 as of July 31, 1982.

On February 15, 1984, the debtors filed their chapter 11 petition. They listed debts totaling $7,989,083.24 in their schedules.

Subsequent to the filing of the bankruptcy petition, an inventory was prepared of all of the books and records kept by the

debtors of their business and financial dealings. This inventory, introduced as an exhibit at trial, lists both the debtors' personal records and those of the various partnerships and associations through which the debtors did business. Mr. Tackett testified he had looked for other books and records but that substantially all of the books and records he could find are listed on the inventory. Mr. Barry Brown, a certified public accountant who inspected the debtors' documents and records at the request of FDIC, compared the inventory to the documents and records. Mr. Brown testified that the inventory is an accurate list of the debtors' records.

The business records kept by the debtors consist almost entirely of bank statements, cancelled checks, and commodities and brokerage account statements. In addition, there are a number of "confirmation" statements, each reflecting the purchase or sale of a particular quantity of silver or other commodities. The debtors do not have ledgers, journals, or summary information of any kind. Aside from check registers for one or two of the partnerships through which the debtors engaged in business transactions, check registers and check stubs are missing. There are no deposit slips other than some deposit slips showing payments by Saxon Oil into an account set up for the purpose of receiving such payments.

Mr. Brown testified that, given the lack of check registers or check stubs and the lack of any summary information concerning the debtors' business transactions, it is impossible to even begin to determine the debtors' financial condition from the records turned over. Mr. Brown testified he could tell by examining the debtors' records that they had engaged in a good deal of business activity, but that he could not tell how much money had passed through the debtors' hands, where the money had come from, or where the money had gone. Although Mr. Brown has had considerable experience in preparing personal financial statements, and in conducting audits, he testified that he could not prepare a financial statement using the records kept by the debtors.

Mr. Tackett testified he did not keep check stubs or check registers on personal accounts; he did not keep secondary records on personal accounts; and that he did not keep detailed records. He further testified that some of the records of the debtors' business dealings were turned over to C.H. Butcher, Jr., for use in preparing Mr. Butcher's tax returns. These records were not recovered by the debtors. Neither debtor identified specific records given to or left with Mr. Butcher.[2]

The debtors aver they have turned over numerous records which are now in the custody of the federal grand jury in Knoxville, Tennessee. They refer to the "extensive" inventory listing these records, consisting of checks, bank statements, 1981 and 1982 tax returns, notes, commodities trading accounts, and other miscellaneous documents. They concede the records do not contain any journal entries, check registers, summary information, or secondary information.

Debtors also suggest the availability to FDIC of numerous financial statements and other documents in its control, publicly recorded real property records, and the claims of other creditors filed and listed on the court's claim register. The debtors concede their financial transactions were "numerous and complex;" they were involved in several corporations and partnerships; and that the records turned over "leave something to be desired." However, they assert that, with the exception of the records turned over for review by FDIC, they left virtually all of the records of "various of the entities" in Mrs. Tackett's former office at the instruction of C.H. Butcher, Jr.

---

2. Mr. Tackett did testify that Mr. Butcher inadvertently got part of the Page Properties, Ltd. records.

## II

Section 727(a) of the Bankruptcy Code in pertinent part states—

> (a) The court shall grant the debtor a discharge, unless—

> .    .  .    .    .    .

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

> . . . .

11 U.S.C.A. § 727(a) (West 1979).

■■■■ As in the case of its predecessor in the Bankruptcy Act of 1898, the purpose of § 727(a)(3) "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Underhill*, 82 F.2d 258, 260 (2d Cir.1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). "[I]t is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Id.* A debtor must provide sufficient written financial information to permit creditors to follow his business transactions, make intelligent inquiry, and ascertain his present and past financial condition. *Kaye v. Hirsch*, 14 B.R. 59, 62 (Bankr.S.D.Fla. 1981). A debtor's intent is not relevant where the objection to discharge is based on the failure to keep books and records. See *Schultz v. Shapiro*, 59 B.R. 844, 848 (Bankr.E.D.N.Y.1986) (intent to conceal information not necessary to support denial of discharge under § 727(a)(3)).

■■■■ It is crystal clear that the debtors failed to keep or preserve books and records from which their financial condition might be ascertained. They were involved in business enterprises as individuals, partners, shareholders, and joint venturers in informal associations. Their financial statement on June 30, 1982, indicated a net worth of $3,874,261.00. They participated in small, medium, large, and extremely large transactions. Their debts approach $8,000,000.00. The sparse records they did keep have been identified in an inventory filed as Exhibit 10. These records are not "extensive" as asserted by the debtors. They kept no ledgers, journals, or summary information of any kind. Mr. Brown's testimony that these records were inadequate to identify the source of the debtors' income or even begin to determine their financial condition is undisputed in this record. From the records kept and preserved by the debtors, their financial condition and business transactions cannot be ascertained. See *Seidle v. Escobar*, 53 B.R. 382 (Bankr.S.D.Fla.1985) (sophisticated debtors dealing with hundreds of thousands of dollars and who had guaranteed millions of dollars of debts failed to keep adequate books and records).

Having found that the debtors failed to keep and preserve books and records from which their financial condition and transactions can be ascertained, the court must determine whether such failure was justified under all of the circumstances of the case. 11 U.S.C.A. § 727(a)(3) (West 1979).

The debtors are certified public accountants. They are knowledgeable and sophisticated enough to realize the importance and necessity of keeping adequate books and records. They have offered no good explanation for their failure to do so. The debtors testified they turned over some records to C.H. Butcher, Jr., ostensibly for use in preparing his tax returns, but they do not identify the records turned over. Nor do they offer any explanation for their failure to retrieve the records from Mr. Butcher.

The court finds that the debtors' failure to keep and preserve books and records from which their financial condition and business transactions might be ascertained is not justified under all of the circumstances of the case.

### III

The court having determined that the debtors' discharge must be denied under 11 U.S.C.A. § 727(a)(3) (West 1979), it is not necessary to consider allegations under 11 U.S.C.A. § 727(a)(2) and (5) (West 1979).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.