**In re Roger Gorton BAXTER, Debtor.**

**DOMINICK & DOMINICK, INCORPO-RATED and Dominick Investor Services Corporation, Plaintiffs,**

**v.**

**Roger Gorton BAXTER, Defendant.**

**Bankruptcy No. 86–02406–R.**
**Adv. No. 87–0119–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 17, 1989.

Ben C. Ackerly, George R. Pitts, Hunton & Williams, Richmond, Va., for plaintiffs.

Thomas F. Eubank, Spinella, Owings & Shaia, P.C., Richmond, Va., for defendant.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes upon the complaint of plaintiffs, Dominick & Dominick, Incorporated and Dominick Investor Services Corporation ("Dominick"), seeking a determination of the dischargeability of certain debts and, in the alternative, the denial of a discharge in bankruptcy of the debtor, defendant Roger Gorton Baxter. Following a hearing before the Court on October 20, 1988, and oral argument on January 10, 1989 the matter was taken under advisement. After reviewing the testimony and exhibits presented at trial and the briefs and arguments of counsel, the Court concludes that the debtor failed to keep or preserve adequate records from which the debtor's financial condition or business transactions could be ascertained, and further that no justification or excuse for this failure exists under the circumstances of this case and, consequently, pursuant to 11 U.S.C. § 727 the debtor should be denied a discharge in bankruptcy. As a result of the Court's determination that the debtor's discharge should be denied, the Court finds it unnecessary at this time to address the issue of the dischargeability of the debtor's indebtedness, if any, to Dominick.

## FINDINGS OF FACT

The debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on December 17, 1986. Sometime in 1982, the debtor, who was graduated in 1978 from North Carolina State University with a degree in accounting, formed a corporation called Structured Shelters of Richmond, Inc. ("Structured Shelters") which was in the business of providing investment advice and services to corporate and individual clients. The debtor was able to purchase and sell various investment instruments for clients of Structured Shelters through his position as a registered representative with Integrated Resources, a Richmond securities firm. As a licensed broker with Integrated Resources, the debtor claimed to have earned income in the form of sales commissions. In his deposition testimony, which was entered into evidence, the debtor stated tht he earned approximately $150,000 in commissions in 1984, $150,000 in 1985, and $60,000 in 1986.

In the operation of Structured Shelters the debtor solicited funds for investment from individuals and other entities. On or about September 2, 1986 the debtor opened an options trading account with Dominick at its branch office in Richmond, Virginia. The debtor's own testimony showed that he deposited funds received from investors into his personal checking accounts, and either failed to keep or failed to preserve records adequate to permit identification of the ownership of particular monies.

An excerpt from the debtor's deposition testimony illustrates the point:

Q: ... Now, do you recall depositing the sum of $20,000, belonging to Mildred Trible in your account?

A: Yes.

Q: And you didn't maintain any record to determine which money in the account belonged to Ms. Trible as opposed to what belonged to you, is that right?

A: No.

Q: That was in your Bank of Virginia account?

A: Yes.

Q: The same would be true of Chester Russell, you deposited $100,000 of his money?

A: Yes.

Q: And James Parsons?

A: Yes.

Q: Dennis Johnson, $90,000?

A: Yes, sir.

Q: Lewis Stone, $50,000?

A: Yes.

Q: Barbara Holt, $20,000?

A: Yes, sir.

Q: And Ellen Wood, $165,000?

A: Yes.

The testimony further showed that the $165,000 check from Ellen Wood was deposited into the debtor's checking account at Central Fidelity Bank on September 5, 1986, at a time when the account contained only $3,831.15. The debtor tendered a personal check for $100,000, dated September 4, 1986, drawn on his Central Fidelity account to Dominick as a deposit made to open his options trading account there. The Court can only conclude from these facts that absent the commingling of Ms. Wood's funds, the debtor's checking account would have contained funds insufficient to cover the check to Dominick.

Other instances of unexplained commingling appear from the evidence. For example, the debtor also stated that he deposited funds received from the West End Medical Group into his personal account, and that he was unable to determine from his own records which money was West End's and which was his.

In addition to causing a complete inability to trace the ownership of funds, the debtor's lack of adequate recordkeeping meant that at any given moment the debtor was unable to inform a particular investor how his money was doing. When a client requested information on the status of his investment the debtor responded with an accrual figure of a percentage targeted to be made on the investment. By the debtor's own admission, this figure was merely a projection, and was not related to actual market performance of any particular investment. The debtor also provided his

clients with periodic statements concerning their investments, the content of which was based upon these targeted amounts.

The debtor used the commingled funds to purchase and sell index options through his account at Dominick. According to the unrefuted testimony of a number of stock brokers who testified at trial, index options are extremely risky investments, and the debtor traded them in an equally risky manner. Specifically, the debtor regularly traded index options without cover, that is he did not hedge his investments in order to limit his liability should the market move in a direction adverse to his positions.

## CONCLUSIONS OF LAW

Section 727(a)(3) of the Bankruptcy Code directs that:

> The court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

This section "is intended to allow creditors and/or the trustee to examine [a] debtor's financial condition and determine what has passed through a debtor's hands." *In re Grimes*, 58 B.R. 368, 371 (Bankr.W.D. La.1986). A debtor's records "must at least reasonably allow for reconstruction of the debtor's financial condition to meet the requirements of the Bankruptcy Code." *Id.* The purpose of § 727(a)(3) "is to make the privilege of discharge dependent upon a true presentation of the debtor's financial affairs." *In re Tackett*, 67 B.R. 354, 359 (Bankr.E.D.Tenn.1986), citing *In re Underhill*, 82 F.2d 258, 260 (2nd Cir.1936), cert. denied, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936).

The Fourth Circuit Court of Appeals has not directly addressed the question of the denial of a discharge under § 727(a)(3). The circuit court did, however, deny a discharge under § 14(c)(2) of the Bankruptcy

Act. 11 U.S.C. § 32(c)(2). *Crider v. Jordan*, 255 F.2d 378 (4th Cir.1958). This section provides that a court should grant a discharge unless, inter alia:

> [T]he bankrupt has ... (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case.

A comparison of the wording of present 11 U.S.C. § 727(a)(3) with that of former 11 U.S.C. § 32(c)(2) shows that only minor changes were made to the old law when the Code was adopted. Therefore, this Court believes that decisions made under the Act addressing the issue of the denial of discharge for the unjustified failure to keep or preserve financial records are authority for interpretations of § 727(a)(3) of the Code.

In *Crider*, the debtor, who owned a road construction firm, took substantial amounts of money out of his business without noting the reasons for doing so on the books or even, in some instances, noting the withdrawals. He used the money for gambling purposes. *Crider, supra* at 378–79. There was no evidence that he intended to defraud his creditors by his actions; a showing of intent to defraud was not necessary where the debtor should have known that there was a necessity to keep accurate records even if the records related to personal financial transactions. *Crider, supra* at 379. The court found the debtor's business and personal transactions were inextricably intertwined where the money for the gambling was coming out of business funds, and denied the debtor a discharge.

Construing § 727(a)(3), the Bankruptcy Court for the Eastern District of Tennessee found that the debtors, who had interests in a number of business ventures, failed to keep ledgers, journals or financial information of any kind—all they had were bank statements, cancelled checks and commodity and brokerage house statements. It was hence impossible to determine "how much money had passed through the debt-

ors' hands, where the money had come from or where the money had gone." *In re Tackett, supra* at 359. The court therefore determined that the debtors' discharge should be denied under § 727(a)(3). Similarly, in *Matter of Wilson,* 33 B.R. 689 (Bankr.M.D.Ga.1983), the debtor, an accountant, had no financial records other than a checkbook which he used to pay business and personal expenses. The court found his failure to keep other financial records unjustified and denied his discharge on that basis.

Because he was knowledgeable concerning accounting principles, and because he was engaged in the business of investing the funds of other people, the debtor's failure in this case to keep accurate records is far more egregious than the conduct of the debtors in the cited cases. In *Crider* and *Wilson,* the debtors were also commingling business and personal funds. In both cases, however, the debtors were the sole proprietors of their businesses, and there is no indication that they were handling other people's money. In *Tackett,* the debtors, who, like Mr. Baxter, invested funds for others, were denied a discharge because they kept inadequate business records. There was no indication, however, that they had failed to identify the funds belonging to other people as Mr. Baxter admits he failed to do.

The debtor in the instant case, a trained accountant, handled funds belonging to other people without keeping any kind of accurate records or identifying individual accounts. His commingling of funds was much more serious than that of the debtors in the previously noted cases. The debtor's conduct, which he failed to adequately explain or justify, injured the individual investors whose money he used. More important for this action, it also prevented the debtor's creditors, as well as this Court, from being able to ascertain the debtor's financial condition. The debtor will be denied a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4). An appropriate Order will issue.