In the Matter of Victor Manuel Ferrucho ESCOBAR and Yolanda Arciniegas De Ferrucho, Debtors.

William D. SEIDLE, Trustee, Plaintiff,

v.

Victor Manuel Ferrucho ESCOBAR and Yolanda Arciniegas De Ferrucho, Defendants.

Bankruptcy Nos. 83–02062–BKC–SMW, 85–0448–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 30, 1985.

___

William D. Seidle, Trustee.

Jose I. Astigarraga, Francis L. Carter, Miami, Fla., for trustee/plaintiff.

Ronald Neiwirth, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard on June 25, August 16, and August 27, 1985, upon the Trustee's complaint filed herein, and the Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Trustee, William Seidle, has filed a four-count complaint pursuant to § 727 of the Bankruptcy Code objecting to the discharge of the Debtors, Victor Manuel Ferrucho Escobar and his wife, Yolanda Arciniegas de Ferrucho, alleging failure to keep records of their financial condition, failure to explain the loss of assets, intentional concealment of property from the Trustee and creditors, and the filing of a false oath in the proceeding. After the Trustee rested his case, the Debtors moved for an involuntary dismissal, and the Court reserved ruling. For the reasons set forth below, the Court denies the Debtors' motion for involuntary dismissal and finds that the Debtors' discharge should be denied pursuant to each of the first three grounds asserted by the Trustee and does not reach the questions raised by the fourth ground, false oath.

### The Background

In the early 1980's Victor and Yolanda Ferrucho had millions of dollars in assets. They were the sole owners of Aerotal, a large airline with 600 employees and a fleet of jets rendering intercontinental air service between Miami and Colombia. Aerotal had offices in Coral Gables, Florida, as well as in Colombia. The Ferruchos owned extensive properties, both in Florida and in Colombia, including a cattle ranch in Florida, three homes in Dade County (including a home on LaGorce Island), homes and a ranch in Colombia, and a hotel on San Andres Island. Besides real property, the Ferruchos owned extensive personal property including a company called Crediturs Limitada and cattle herds worth approximately one million dollars grazing on their ranches in Florida and Colombia. All told, the Ferruchos' assets totalled more than $14 million dollars as of December, 1981. The Ferruchos' 1981 financial statements reflect their combined net worth as more than $13 million dollars.

Sometime thereafter the Debtors began to experience financial difficulty. In the fall of 1982 financial problems at Aerotal became acute. On September 22, 1983, Mr. Ferrucho resigned as Aerotal's chief executive officer. Later that month, the Colombian Government shut down Aerotal.

In November, 1983, an involuntary petition under Chapter 7 was filed against the Debtors in this Court. In May, 1984, the Debtors filed their Schedules and Statement of Financial Affairs. Their scheduled debts exceed $14 million dollars against scheduled assets of only $3 million. Of the $3 million in assets, approximately $1.3 million consists of three properties transferred by the Debtors, but later recovered by the Trustee as a preference, and $1.4 million is a claim against Aerotal and Creditors which, as noted below, is virtually worthless. The Schedules show that by May, 1984, the Debtors had transferred or otherwise disposed of virtually all their assets.

### Failure to Keep Records of Financial Condition

If there is a single common thread running through the evidence presented in this case, it is that through the simple expedient of not keeping proper records and not remembering transactions, the Debtors have frustrated the Trustee's efforts to discover and evaluate assets for the benefit of creditors. Section 727(a)(3) allows the Court to deny a discharge in bankruptcy to debtors who have:

... failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The Court finds that without justification, the Debtors failed to keep records from which their financial condition might be ascertained. This Court has the discretion to determine whether the records kept by a debtor are adequate. *Goff v. Russell Co.*, 495 F.2d 199 (5th Cir.1974).

The adequacy of the records depends on all the circumstances of the case. *Milam v. Wilson*, 33 B.R. 689 (Bkrtcy.M.D.Ga.1983). In determining the adequacy of the records, the Court's inquiry should include:

the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Id.* at 692.

In this case, Mr. Ferrucho is a sophisticated businessman who has had training in business administration, accounting, management, tax and law. During the first ten years of his business career he was a business consultant, whose office rendered accounting advice. In a little over 10 years, the Ferruchos built a fledgling airline into a complex multi-million dollar international business with offices in Florida and abroad. They personally guaranteed millions of dollars of debts. As noted below, they were dealing with hundreds of thousands of dollars, ultimately accumulating a claim for $1.4 million against Aerotal and Crediturs, two of their companies. Clearly, theirs is not a simple consumer bankruptcy.

Despite their sophistication, the Ferruchos failed to keep records in instance after instance. They assert that they are not required to keep business records under Colombian law. The Debtors, however, failed to keep adequate records not just in relation to their Colombian business affairs but also in relation to their financial affairs and transactions in Florida. The Ferruchos resided here and did business here, and the fact remains that they are here seeking a discharge under American bankruptcy laws.

The record is replete with specific instances where the Debtors' failure to keep records has prevented the Trustee from determining the Debtors' true financial condition. A few examples will suffice:

A. The Ferruchos owned approximately $1 million dollars' worth of cattle as of December, 1981 at their ranches in Florida and Colombia. According to the Debtors, they sold all the cattle over the course of time, transferring at least $150,000 of the sale proceeds to the United States. When the Trustee asked how this money was transferred to the United States, Mr. Ferrucho stated that he transferred the money through some friends whom he could not identify. In connection with the operation of their cattle ranches, they did not keep a formal inventory of the stock; as he put it, they would count the cattle and jot it down on any piece of paper. The Debtors did not keep the regular books or records of a business—no general ledger, no disbursements journal, no profit and loss statements.

The Debtors' financial affairs in relation to their ranches and cattle herds cannot be determined from their records. The Trustee is entitled to the opportunity to track the flow of funds and disposition of assets at the ranches. The Debtors' miscellaneous records and their general explanations that they sold the cattle are not enough.

B. The Ferruchos maintained several bank accounts in Florida. From these personal accounts, the Ferruchos at times paid Aerotal debts. Aerotal would later reimburse them for these payments, and those reimbursements would then be deposited into one of their personal accounts. Aerotal did not repay all such advances, but rather is still indebted to the Debtors. Mr. Ferrucho, however, does not know which of his personal accounts he used to advance monies on behalf of Aerotal.

The Debtors listed this Aerotal debt on their Schedule of Assets as part of a $1.4 million debt owed to them by Aerotal. Even though their sworn Schedules state that the $1.4 million dollars are owed by Aerotal, the Debtors claim that figure also includes monies owed to them by Credituns. This $1.4 million claim is comprised of: a) the still-unreimbursed amounts the Debtors advanced to Aerotal; b) the balance of certain accounts receivable owed by Aerotal

and Credituns to Ferruar, Inc., which accounts the Debtors claim were transferred to them in payment of a $280,000 loan (sometimes referred to in the record as a loan of "approximately $300,000"), they had extended to Ferruar, Inc.; c) the amounts invested by the Debtors in Aerotal from the sales of their personal assets; and d) the amount of a debt Aerotal owed to a Mr. Matallana, which was transferred to Mr. Ferrucho in exchange for a Ferruar, Inc. purchase money note and mortgage on a Miami Beach hotel.

Mr. Ferrucho does not know who owes what out of the $1.4 million debt, nor does he know, for example, what part of the $1.4 million debt is represented by the accounts receivable that Ferruar, Inc. transferred to the Debtors. As a result, the Trustee is effectively precluded from collecting that claim.

As Mr. Ferrucho explained, the Debtors did not keep personal business records because Colombian law does not require it. They delegated the task of record-keeping to Aerotal's employees or to his family. So, for example, in connection with one of the cars he owned, both Mr. Ferrucho and his daughter made payments on the car loan. Because the Ferruchos did not keep business records, however, he is unable to determine which payments each made. Mr. Ferrucho expressly admitted that he delegated the task of keeping track of such payments to his children. As a matter of law, however, the debtor is responsible for keeping accurate business records; the duty is in effect not delegable. *In re Fineberg*, 36 F.2d 392 (D.N.Y.1929). Thus, the Ferruchos are accountable for the lack of records even though they claim to have delegated that function to someone else.

C. Although the Debtors disclosed only five bank accounts in their schedules, the evidence shows that during the two years immediately preceding the filing of the petition, the Debtors had a Swiss bank account as well as four or five other bank accounts which they did not disclose because allegedly, the accounts were inactive.

In connection with the Swiss bank account, the Ferruchos claim they do not have records because the bank did not provide any. The Debtors have presented a letter written after-the-fact, purportedly from the Swiss bank, which states that only two deposits, totalling less than $5,000, were made to the account. Although it is hearsay, the Court has received the letter into evidence. Nothing in the letter confirms that the bank does not supply account records nor does anything therein excuse the Debtors from their duty to maintain their own records of deposits into and withdrawals from that bank account.

As to the inactive accounts, Mr. Ferrucho did not even recall the names of the banks at which they were maintained. A trustee is not required to accept a debtor's word that a bank account was inactive during the period preceding bankruptcy. He is entitled to examine records reflecting the activity in such accounts to confirm independently the debtor's financial condition. Here, through their failure to maintain records and their professed inability to recall the names of the banks, the Debtors have precluded the Trustee from conducting a meaningful examination of their financial affairs.

### Failure to Explain Satisfactorily the Loss of Assets and Intent to Hinder

■ Much of the evidence presented by the Trustee tends to support more than one ground for denial of discharge. Many of the Court's findings with respect to the Debtors' failure to keep records also support the Court's conclusion below that the Debtors failed to explain satisfactorily the loss of their assets and in fact acted with intent to hinder, delay or defraud creditors and the Trustee. Because the proof relating to the Debtors' failure to explain the loss of assets overlaps with the proof relating to their intent to hinder the Trustee, the Court will treat these two grounds together.

Under § 727(a)(5), the Court may deny a discharge if the debtor fails "to explain satisfactorily, before determination of deni-

al of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The Court finds that the Debtors have failed to explain adequately the loss of their assets. The record is replete with such instances, but the examples set forth below will suffice.

Similarly, under § 727(a)(2), a court may deny a discharge to a debtor who transfers or conceals property with intent to hinder, delay or defraud creditors and the trustee within a year of bankruptcy. For the reasons set forth below and after observing the demeanor of the witnesses, the Court concludes that the Debtors intended to, and did, conceal assets.

### Transactions concerning Ferruar, Inc. and the Beach Palace Hotel

One principal controversy in this case has centered on the ownership by Ferruar, Inc. of the Beach Palace Hotel on Miami Beach. According to the Debtors, Ferruar, Inc. was a corporation owned by their two eldest children, Rene and Marta Ferrucho. According to Mr. Ferrucho, Ferruar, Inc. borrowed approximately $280,000 from the Debtors under a $490,000 promissory note issued by Ferruar, Inc. The evidence, however, shows clearly that the note was issued not by the corporation, but by the Ferruchos' son in his individual capacity. To date the Ferruchos have advanced no satisfactory explanation concerning the disposition of this note. This $280,000 was used as a down payment for the Beach Palace Hotel which Ferruar, Inc. bought from Odnamra N.V. The Debtors deny owning either the hotel or Ferruar, Inc. The evidence, however, is clearly to the contrary and shows that the Ferruchos in fact owned and controlled both Ferruar, Inc. and the hotel.

Mr. Ferrucho met with the seller of the hotel without his children to negotiate the terms for the hotel's purchase. By his own admission, he made the decision to buy the hotel. The contract for its purchase was signed by the Ferruchos individually. The money for the down payment came directly

from the Ferruchos; Ferruar, Inc., was not involved in making that payment. According to their former lawyer, Mr. Ferrucho was the one who had the authority in connection with the purchase and gave him the instructions for the closing.

Once the hotel was in operation, Mrs. Ferrucho had a role in the running of the hotel during the frequent and prolonged absences of her son, who attended school in Switzerland. She was an authorized signatory on the Ferruar, Inc. bank account. The Ferruchos pledged a $50,000 certificate of deposit they owned personally to secure a bank loan to Ferruar, Inc., and Mr. Ferrucho was involved in the negotiations for this Ferruar bank loan.

Later still, when the hotel was sold, allegedly by Ferruar as owner of record, Mr. Ferrucho met with the buyer's representatives. The buyer testified that during the negotiations for the purchase, the Ferruchos' son explained that he could not accept any offers without checking with his father; the deal was reached when the son said his father accepted the offer. Disregarding the buyer's testimony as to the son's statements as evidence of the truth of the son's statements, the Court finds that the son's conduct in the negotiations was inconsistent with the Ferruchos' contention that the son was the owner of the hotel.

The Court further finds that at all material times the Ferruchos were the true beneficial owners of Ferruar, Inc. and the Beach Palace Hotel. In reaching its conclusion, the Court has relied not only upon the substance of the testimony presented but also upon observation of the witnesses, particularly Mr. Ferrucho, and their demeanor on the stand. The Court believes that Mr. Ferrucho's testimony has not in all instances been credible and that he often attempted to be evasive, rather than forthright.

The Ferruchos' attempts to evade the truth in connection with the Ferruar, Inc. matter are evidenced as well by their declarations in their sworn Statement of Financial Affairs. Their statements are false in

several respects, including, among others, the following:

A. According to the Ferruchos, Mr. Ferrucho owed approximately $50,000 to Ferruar, Inc. in November or December, 1983. The Ferruchos repaid this loan to Ferruar, Inc. by allowing Flagship Bank to set off a Ferruar, Inc. loan against the Ferruchos' $50,000 certificate of deposit. They failed to disclose the repayment of this loan on their Statement of Financial Affairs which specifically required them to identify all loan repayments made during the year immediately preceding bankruptcy. Further, in response to a question in the Statement of Financial Affairs seeking disclosure of set-offs occurring within a year prior to bankruptcy, the Ferruchos stated "None."

B. In their Statement of Financial Affairs, the Ferruchos stated that the only vehicle they owned was a 1979 Chevrolet truck. The evidence shows, however, that Victor Ferrucho also owned a Datsun and was at least part owner or titleholder of a Scirocco. Both of these cars were transferred to Ferruar, Inc. after the Statement of Financial Affairs was filed. Not only did the Ferruchos fail to disclose Mr. Ferrucho's ownership interest in the cars, but they also failed to disclose the existence of the bank loan secured by these cars for which Victor Ferrucho was personally obligated. This pattern of non-disclosure coupled with the subsequent transfer of the cars to Ferruar, Inc. is probative of the Ferruchos' interests in Ferruar, Inc. and their intent to hinder, delay and defraud creditors.

C. When Ferruar, Inc. bought the Beach Palace Hotel, it executed a $419,000 note and mortgage in favor of the seller, Odnamra N.V. When the Ferruchos sold their Ocala ranch to Odnamra in October, 1983, Odnamra transferred the Ferruar note and mortgage on the hotel to them. Thereafter the note and mortgage were transferred to Mr. Matallana. Even though this transfer was made within one year immediately prior to bankruptcy, the Ferruchos failed to make the required dis-

closure of this transfer on their Statement of Financial Affairs.

One of the principal defenses advanced by the Debtors to overcome their failure to disclose their transfer to Matallana of the Ferruar/Odnamra note and mortgage and their interest in Ferruar and the Beach Palace Hotel is that the first mortgagee eventually foreclosed on the hotel and bought it at the foreclosure sale. Under § 727(a)(2), a transfer will not bar discharge if the property transferred is not valuable and the transfer does not reduce the assets available to creditors. See 4 Collier on Bankruptcy § 727.02 at 727–17 (15th Ed. 1985). The Debtors contend that because the note and the hotel were lost through foreclosure, the property was valueless and the assets available for creditors were therefore not reduced. Their contention is not well-founded.

The Debtors filed their Statement of Financial Affairs in May, 1984. At that time, the Odnamra/Ferruar $419,000 note and mortgage were still outstanding. The property was not lost through foreclosure until the fall of 1984, months after the Debtors filed their sworn Statement of Financial Affairs and Schedules, which failed to disclose their transfer of the Odnamra/Ferruar mortgage and their interest in Ferruar. In addition, Ferruar continued to do business, including operating a restaurant until a time some months after the Debtors filed Schedules. The evidence, therefore, does not show that the note and mortgage and the Debtors' interest in Ferruar were valueless at the time the petition in this case was filed. The assets available to creditors were reduced as a result of the Debtors' omissions. By virtue of the Debtors' concealment, the Trustee was deprived of any opportunity to attempt to sell the property for the benefit of creditors of the Debtors' estate.

When seeking a discharge in bankruptcy, the Debtors are duty-bound to explain satisfactorily the loss of their assets. The Court finds that the Debtors have failed to explain satisfactorily the loss of assets, including, but not limited to, the loss of the promissory notes, the loss of their interest in Ferruar, Inc., and the loss of the Beach Palace Hotel. The Court also finds that the Ferruchos concealed their interests in assets, including their interest in Ferruar, Inc. and the hotel, and that their transfers of the hotel, and the Odnamra/Ferruar note and mortgage were made with intent to delay, defraud and hinder creditors and the Trustee. The Court also finds that the Ferruchos concealed their interest in La Bonanza farm in Colombia, which in 1980 had a value of $500,000. The Ferruchos owned this farm when they filed their Statement of Financial Affairs, but failed to disclose it.

### CONCLUSION

For the foregoing reasons, the Debtors' motion for involuntary dismissal is denied. This Court will also deny the Debtors a discharge.

In accordance with the Bankruptcy Rules, a separate judgment has been entered of even date herewith.