**In re Gerald Wayne JOHNSON, Debtor.**

**Lowell T. CAGE, Trustee, and Earl Newsome, Gail Newsome, and Jill Newsome, Plaintiff,**

. v.

**Gerald Wayne JOHNSON, Defendant.**

**Bankruptcy No. 82–01412–H1–8.**
**Adv. Nos. 82–2012–H3, 82–2024–H1.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 13, 1985.

Robert C. Maley, Jr., Sheinfeld, Maley & Kay, Houston, Tex., Attys. for Gerald Wayne Johnson.

Joseph M. Hill, Cage, Hill & Glover, P.C., Houston, Tex., Attys. for Lowell T. Cage.

Bobbie G. Bayless, Bayless & Stockes, Houston, Tex., Attys. for Earl Newsome, Gail Newsome, and Jill Newsome.

## MEMORANDUM DECISION ON OBJECTION TO DISCHARGE

EDWARD J. RYAN, Bankruptcy Judge.

Gerald Wayne Johnson, a plastic surgeon, suffered the misfortune of having had entered against him a multi-million dollar judgment after the trial of a medical malpractice action which had been commenced against him in the State Court.

Dr. Johnson sought relief as a debtor under Chapter 7 of the Bankruptcy Code.[1] He converted the proceeding to one under Chapter 11; then he reconverted the proceeding to a Chapter 7 proceeding.

In due course Lowell T. Cage was appointed Trustee and he commenced upon the administration of the estate. This administration continues to date.

Earl Newsome, Gail Newsome and Jill Newsome filed their complaint objecting to the discharge of the debtor after a complaint seeking the same relief had been filed by the Trustee, Mr. Cage. The Newsomes' are the judgment creditors in the State Court action heretofore adverted to.

The adversary proceedings objecting to discharge were consolidated for trial and they came on for trial on September 10, 1985. The evidence as it unfolded disclosed the clumsy efforts of a desperate man seeking to avoid in any way the payment of his just debts including the abovementioned judgment.

Preliminarily, it is to be noted and emphasized that the attorneys who now appear for the debtor-defendant have represented him honorably and well since they undertook that representation. They played no part in the nefarious machinations which preceded their retention and which will be hereinafter touched upon in brief.

Prior to the occurrence of the Newsome tragedy, Dr. Johnson had had a medical malpractice claim made against him in 1976. Then either he elected to forego the protection of medical malpractice insurance or, medical malpractice insurance became unavailable to him.

In any event, in lieu of insurance he undertook to protect his assets by means of a scheme characterized as a medical malpractice defense plan.

For our purposes this was the start of a program designed to make the defendant "judgment proof."

*In limine* it is observed that in our free society one generally is at liberty to handle his affairs as he sees fit. He can squander his wealth, give it away or hoard it.

However, society demands that each of us adhere to a course of conduct that long ago was simply called "true and plain dealing."[2]

The acts of the defendant proven in the trial were neither true nor plain. The "badges of fraud" were shown to be present here coupled with perjury and forgery.[3]

The defendant's actual intent to defraud his creditors was demonstrated. No useful purpose would be served by reviewing the details of each of the various components of the fraudulent venture upon which the debtor embarked.

Some comment, however, is required to be made about the defendant's fanciful account of his dealings with his imaginary friend and purported business acquaintance, Harry Bradmoore, phantom agent for the non-existent Venezuelan International Oil Corporation.

The defendant's story of investing well over $400,000 by passing cash to this bar room acquaintance on several occasions is utterly incredible. It would bring a blush to the cheek of Baron Munchausen and qualify for high rank in the Ananias Club. It smacks of Lewis Carroll.

The main findings of facts and conclusions of law are made and stated simulta-

---

1. Cf. Deuteronomy, Chapter 15; 1, 2.

2. Statute of Fraudulent Conveyances. 13 Eliz.C. 5, 1570. 6 Statutes at Large (Pickering) 268.

3. Cf. *In re D.H. Overmyer Telecasting Co., Inc.* 23 B.R. 823, 916.

584

neously with the filing of this Memorandum.

Judgement is to enter denying the debtor his discharge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

 Upon the trial of the above-captioned case, the Court makes the following findings of fact:

1. Defendant filed a Chapter 7 Bankruptcy petition on May 21, 1982;

2. Defendant converted his Chapter 7 proceeding to a Chapter 11 proceeding on May 12, 1983, and Defendant reconverted such proceeding to a Chapter 7 proceeding on September 1, 1983;

3. A partition of community property was executed by Defendant and his wife and dated December 16, 1977;

4. On or about August 28, 1981, Defendant released his interest in certain real property located in Polk County, Texas, more particularly described as follows:

West half of Reserve Three (3), Block One (1), Section Five (5), of Twin Harbors, Volume 7, Page 36, a subdivision the map or plat of which is recorded in the Deed Records of Polk County, Texas; to Harold Ellis, the husband of one of the Defendant's employees;

5. On or about October 19, 1981 and October 30, 1981, Defendant transferred his interest, and the interest of Houston Plastic Surgery Associates Pension Fund, in Humble Skilled Care Facility to his step-daughter, Elaine J. Martin;

6. On or about October 29, 1981, Defendant transferred his interest in a Joint Venture known as Humble 25 Acres to his step-daughter, Elaine J. Martin;

7. On or about December 15, 1981, Defendant transferred his shares of TOPS, Inc. stock to his brother-in-law, Rex Eley;

8. On or about December 24, 1981, Defendant transferred his interest in Red Oak Drive Property Joint Venture to his brother-in-law, Rex Eley;

9. On or about December 30, 1981, Defendant and/or his wife transferred the real property more particularly described as:

Lots 1 and 2, Block 4, Ponderosa Trails, Section 1, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 271, Page 145 of the Map Records of Harris County, Texas;

to Defendant's mother-in-law, Irene Martin;

11. Partitions of Community Property were executed by Defendant and his wife and dated June 12, 1979, December 4, 1979, and February 25, 1981. Those agreements were back-dated to reflect an execution date prior to the dates on which they were actually executed;

12. Each of the transfers referred to in Findings of Fact 3 through 9 and 11 were made by Defendant with intent to hinder, delay or defraud creditors;

13. Harry Bradmore, the individual in the Cayman Islands to whom the Defendant alleges he paid $420,000.00, does not exist, and those transactions did not occur;

14. Defendant has failed to satisfactorily explain the loss and diminution of his assets and the deficiency of assets to meet his liabilities;

15. Defendant has concealed or failed to keep or preserve recorded information, including books, documents, records, and papers from which his financial condition or business transactions might be ascertained, and such concealment or failure is not justified under any of the circumstances of this case.

### II.

The Court states the following Conclusion of Law:

The discharge of Defendant should be denied pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), and (a)(5).