**In re Michael SHAPIRO, Debtor.**

**Gary SCHULTZ, Trustee in Bankruptcy, Plaintiff,**

v.

**Michael SHAPIRO, Defendant.**

**Bankruptcy No. 885–50056–18. Adv. No. 885–0106–18.**

United States Bankruptcy Court, E.D. New York.

April 18, 1986.

Mitchell N. Kay, Mineola, N.Y., for debtor/defendant.

Jacobson & Viscomi, New York City, for trustee.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

On May 24, 1985, Gary Schultz, trustee of the debtor's Chapter 7 estate (hereinafter "plaintiff"), instituted three adversary proceedings against the debtor. The cause of action to be presently determined constitutes plaintiff's objections to the debtor's general discharge under 11 U.S.C. § 727.[1]

The plaintiff opposes the debtor's discharge on three grounds: 1) the debtor has failed to keep or preserve records from which the debtor's financial condition or business transactions might be ascertained, 11 U.S.C. § 727(a)(3); 2) the debtor has knowingly and fraudulently made numerous false oaths both in his bankruptcy petition and during his examination at the first meeting of creditors, 11 U.S.C. § 727(a)(4)(A); and, 3) the debtor has failed to satisfactorily explain the loss of certain assets owned by the debtor and his wholly-owned corporations, 11 U.S.C. § 727(a)(5). The debtor denies all of the plaintiff's allegations.

## DISCUSSION

The relief of discharge is a cornerstone of the debtor's "fresh start" in bankruptcy. It enables the debtor to begin his post-bankruptcy life with a clean slate vis-a-vis his creditors. Accordingly, Bankruptcy Rule 4005 charges the party objecting to discharge with the burden of proving the objection by clear and convincing evidence. *In re Switzer*, 55 B.R. 991, 996 (Bkrtcy.S. D.N.Y.1986), *In re Bailey*, 53 B.R. 732, 735 (Bkrtcy.W.D.Ky.1985), *In re Hendren*, 51 B.R. 781, 788 (Bkrtcy.E.D.Tenn.1985).[2] Objections to the debtor's general discharge must be construed strictly against the objectant and liberally in favor of the debtor. *In re Switzer*, 55 B.R. at 997, *In re Shebel*, 54 B.R. 199, 202 (Bkrtcy.D.Vt.1985), *In re Irving*, 27 B.R. 943, 946 (Bkrtcy.E.D.N.Y. 1983).[3]

The above mandate notwithstanding, the discharge of debts inures to the benefit of only the honest debtor. *In re Switzer*, 55 B.R. at 997. A trustee's or creditor's objections to discharge transpose Section 727 into the vehicle through which this court can preclude abusive debtor conduct. *In re Brown*, 56 B.R. 63, 66 (Bkrtcy. D.N.H.1985), *In re Harron*, 31 B.R. 466, 468 (Bkrtcy.D.Conn.1983). The debtor who procures a general discharge must *a fortiori* reveal and not conceal his financial state to the court, as well as to his trustee and creditors. *In re Underhill*, 82 F.2d 258, 260 (2d Cir.1936), *cert. den.*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936), *Matter of Silverman*, 10 B.R. 727, 731 (S.D.N.Y. 1981).

Section 727(a)(3) bars discharge for the debtor's failure to keep and preserve

---

1. The plaintiff has sought the debtor's turnover of certain assets through the two other actions. Adversary Proceeding # 885–0107 has been disposed of by order of this court directing the debtor to deliver to the plaintiff certain vehicles owned by Shapiro Trucking & Warehouse Corp., a corporation wholly owned by the debtor. In the second turnover proceeding, Adversary Proceeding # 885–0105, the plaintiff names Peggy Shapiro, the debtor's wife, as co-defendant, and attempts to effectively annul the defendants' 1979 transfer of title to the premises at 10 Shelly Drive, Massapequa, New York, to Peggy Shapiro individually. The defendants, having already interposed their answer, seek leave to amend their answer to include two affirmative defenses; plaintiff opposes this motion on the grounds that it is untimely. This action has been held in abeyance pending the determination of the present case, to wit, the plaintiff's objections to discharge.

2. The Second Circuit has previously held that under former Bankruptcy Rule 407, the trustee bore the burden of proving facts essential to the objection to discharge. *In re Lefkowitz*, 4 B.C.D. 835, 836 (S.D.N.Y.1978), *aff'd* 603 F.2d 213 (2d Cir.1979).

3. This principle was similarly applied by the Second Circuit to the discharge provisions of Section 14 of the former Bankruptcy Act. *In re Adlman*, 541 F.2d 999 (2d Cir.1976).

records from which his financial condition or business transactions might be ascertained. This caveat assures the trustee and creditors that they will be provided with sufficient information with which they can assess the debtor's estate and general financial posture. *In re Underhill,* 82 F.2d at 260. The debtor is required to take such steps as ordinary fair dealing and common caution dictate to aid the interested parties in their task. *Id.; In re Brown,* 56 B.R. at 66; *see also, In re Branch,* 54 B.R. 211 (Bkrtcy.D.Col.1985) (where the debtor was not denied discharge under Section 727(a)(3) because his records were inadvertently destroyed by fire).

[6, 7] The court has reasonably wide discretion in determining whether the produced records satisfy the statutory requirements of Section 727(a)(3). *In re Brown,* 56 B.R. at 66, *Matter of Escobar,* 53 B.R. 382, 384, 13 B.C.D. 701 (Bkrtcy.S.D.Fla. 1985). The produced records will be deemed adequate if they reflect the debtor's finances with a fair degree of accuracy and in a manner appropriate to the debtor's business. *In re Brown,* 56 B.R. at 67. The exigencies of the particular case resolve questions of whether a failure to keep and produce certain records is justifiable. *Id.* at 66, *In re Branch,* 54 B.R. at 215. However, an intent to conceal information is not necessary to support a denial of discharge under Section 727(a)(3). *In re Brown,* 56 B.R. at 66; *see generally, In re Underhill,* 82 F.2d at 258.

■ The debtor's burden to produce ascertainable records parallels but is distinct from the creditor's burden to prove his objection. *In re Martin,* 554 F.2d 55, 58 (2d Cir.1977).[4] The trustee and creditors are therefore not required to take the debtor's word as to his financial situation. *Matter of Escobar,* 53 B.R. at 386. Furthermore, the court's speculations premised on the testimony before it cannot serve as an adequate substitute for unqualified,

credible proof. *In re Switzer,* 55 B.R. at 997.

■ Similarly, the court must not be required to hypothesize as to any loss of assets that have been in the debtor's possession or under his control. *Id.* Under 11 U.S.C. § 727(a)(5), the debtor has the burden to explain satisfactorily any loss of assets.

■ To comply with the duty explicit in Section 727(a)(5), the debtor must explain his losses in a manner that will convince the court of his good faith. *In re Hendren,* 51 B.R. at 788. The court must perceive "... that it is dealing with more than an unreliable remake of reality, custom-made to comport with current exigencies." *Id.* at 789.

■ A debtor's satisfactory explanation of the loss of his assets must constitute a showing greater than mere generalities. *In re Sperling,* 72 F.2d 259, 261 (2d Cir.1934). Bankruptcy Judge Schwartzberg has cautioned debtors that "a vague, indefinite and uncorroborated hodgepodge of financial transactions will not suffice under 11 U.S.C. § 727(a)(5) for an adequate explanation of the loss or deficiency of assets." *In re Switzer,* 55 B.R. at 998. Analogous to the proscriptions under Section 727(a)(3) noted above, the trustee and creditors are not required to take the debtor's word that he no longer has certain assets. *Id.; see also, In re Chalik,* 748 F.2d 616, 619–20, 12 B.C.D. 855 (11th Cir. 1984). Rather, those interested parties are entitled to "honest and accurate signposts" that clearly indicate the property that the debtor has acquired and disposed of prior to his bankruptcy filing. *In re Shebel,* 54 B.R. at 202, *In re Slocum,* 22 F.2d 282, 285 (2d Cir.1927).

■ Sections 727(a)(3) and (a)(5) compel the debtor to maintain his financial affairs in a good faith manner. The proper comportment in this regard has been articulated by Bankruptcy Judge Ryan as fol-

---

**4.** *Accord, In re American Provision Co.,* 44 B.R. 907, 909 (Bkrtcy.D.Minn.1984), 12 B.C.D. 558, 11 C.B.C.2d 1289, where the court noted that,

regardless of where the ultimate burden of persuasion lies, assignment of the initial burden of production depends on the circumstances.

lows: "Society demands that each of us adhere to a course of conduct that long ago was simply called 'true and plain dealing.'" *In re Johnson*, 54 B.R. 582, 583 (Bkrtcy.S. D.Texas 1985). This dictate is equally applicable to the debtor's disclosure of his financial condition in the bankruptcy petition and its accompanying statements and schedules. False oaths and accounts knowingly and fraudulently made by the debtor constitute sufficient grounds for the court to deny a debtor's discharge under 11 U.S.C. § 727(a)(4)(A).

▆▆▆▆ Section 727(a)(4)(A) ensures the interested parties that they will be supplied with dependable information that obviates the need for exhaustive examinations to uncover the debtor's true financial state. *In re Shebel*, 54 B.R. at 202; *accord, In re Tabibian*, 289 F.2d 793, 796–97 (2d Cir. 1961). The false oath may consist of a false statement or omission of fact, but must relate to a material matter. *In re Bailey*, 53 B.R. at 735. This element of materiality is satisfied when the false oath is pertinent to the discovery of assets or past transactions. *In re Irving*, 27 B.R. at 945. Where a debtor's duty to provide omitted information is self-evident, his reliance on an attorney's advice does not rebut inferences of knowledge and intent. *In re Shebel*, 54 B.R. at 203.

▆▆▆▆ The requisite fraudulent intent under Section 727(a)(4)(A) can be established by the cumulative effect of the debtor's falsehoods evincing a pattern of reckless and cavalier disregard for the truth. *In re Ligon*, 55 B.R. 250, 253 (Bkrtcy.M.D. Tenn.1985). The objectant meets its burden upon a showing of the debtor's perfunctory inattention to the serious nature of the information sought and his gross disregard of his responsibility to provide such information upon request. *In re Bailey*, 53 B.R. at 735.

▆▆▆▆ An oath or account is knowingly false where the debtor was aware that certain information should be supplied and nevertheless failed to provide the information. *Avallone v. Gross*, 309 F.2d 60, 61 (2d Cir.1962). For example, a debtor has knowingly made a false oath where the debtor was aware that a creditor should be scheduled and yet failed to list the creditor. *In re Shebel*, 54 B.R. at 202. As one court has noted, the usual violation under Section 727(a)(4)(A) occurs when a debtor lists certain information but omits other information of the same type, with the obvious intent of keeping such information from the trustee and creditors. *In re Brown*, 56 B.R. at 68.

FINDINGS OF FACT

1) The debtor, Michael Shapiro, filed his voluntary Chapter 7 petition on January 14, 1985. At that time, the debtor submitted statements and schedules detailing his assets and liabilities, in addition to filing a Statement of Financial Affairs for Debtor *Not Engaged in Business*. The debtor subsequently amended his petition to include a Statement of Financial Affairs for Debtor *Engaged in Business*.

(A) The debtor has not produced ascertainable records of his financial condition and business transactions pursuant to 11 U.S.C. § 727(a)(3):

2) The debtor concealed and did not reveal his personal assets and liabilities among those of his wife and his wholly-owned corporations.

a) When shown checks he had drawn on the bank account of Shapiro Trucking & Warehouse Corp., the debtor was unable to distinguish expenses as those of himself, his family, or the corporation. The debtor has admitted to using the bank accounts of his wholly-owned corporations to pay for personal and family expenses. The debtor also regularly drew checks from a National Westminster Bank account that the debtor claims was maintained solely by his wife, but to which the debtor had a power of attorney. Moreover, the debtor was given full control over his wife's bank accounts with Emigrant Savings Bank and European American Bank by virtue of powers of attorney.

b) The debtor contends that his wife would commonly use her personal funds to

pay for corporate expenses; she would be subsequently reimbursed by corporate checks made payable to cash. The debtor again could offer no substantive documentation to verify such a practice.

c) Late in the trial, the debtor produced what he claimed to be invoices that represented the sums indicated by various checks drawn on the corporate account to cash. The invoices at best offer inconclusive proof of the expenses they purport to represent and the manner in which they were paid. Moreover, the eleventh hour production of these invoices, which followed debtor's repeated claims that he could produce no records to substantiate his testimony, contributes to the specious and disingenuous quality of these records.

3) The debtor has failed to provide the trustee and creditors with sufficient information from which the debtor's assets and liabilities could be identified with a fair degree of accuracy. The debtor conceded throughout the course of this hearing that he kept and could produce no records which would identify expenses as personal or corporate other than check stubs. However, even these records offered little aid to the debtor in his attempts to discern the various expenses and debts as corporate or personal.

4) The records produced by the debtor do not accurately represent the debtor's personal and business finances. Check stubs and notations on checks drawn by the debtor payable to cash do not constitute sufficient records.

5) The debtor has not kept records in the manner appropriate to his business from which his business transactions might be determined. The debtor in essence argues that he lacks records of his business transactions because he is in a cash intensive business. However, the debtor's own witness, Frank Mainaieri, a retired warehouse and trucking business owner, testified that he maintained a system of accounts and petty cash vouchers to document his purely cash transactions. Therefore, ordinary business custom for this industry refutes the debtor's explanation for the dearth of discernible documentation regarding the debtor's business transactions.

6) The debtor's failure to keep and produce the necessary records is not justifiable under the exigencies of this case. The debtor's business operated a fleet of owned and leased trucks, which number varied according to need. The employees of this business were derived from a pool of drivers and independent owner-operators. Furthermore, Shapiro Trucking & Warehouse maintained terminals in Far Rockaway and in New Jersey, and serviced many customers in the garment and retail clothing industries. The debtor's testimony also reveals his sophisticated knowledge of the trucking business and common industry practices. In this context, the debtor's failure to keep financial records for his business is inexcusable.

7) The debtor's testimony as to his financial condition and business transactions does not supersede the debtor's obligation to produce credible, substantive proof.

(B) The debtor has failed to explain satisfactorily the loss of assets to meet liabilities, as required by 11 U.S.C. § 727(a)(5):

8) The debtor has not explained satisfactorily the disposition of the proceeds from the sale of the premises at 1406 Augustina Avenue from 1406 Augustina Ave. Corp., a corporation wholly owned by the debtor, to BTB Enterprises, Inc. This court is unable to discern from the debtor's testimony the sum certain received from this sale; the debtor estimates the dollar amount at approximately $40,000. The debtor asserts that this money was used to buy blouses and jewelry that he would then sell at flea markets. However, the debtor has produced no receipts or other records that would value the merchandise at $40,000 or that would otherwise relate the sale proceeds to the merchandise.

9) The debtor has failed to satisfactorily explain the disposition of the proceeds from the sale of certain trucks owned by Shapiro

Trucking and Warehouse Corp. or M. Shapiro Express Co. to Allstar Trucking Co. The debtor's testimony reveals that Shapiro Trucking & Warehouse Corp. received approximately $20,000 from this sale. The debtor claims to have used this money to pay bills, but could not specify the debts that were paid out of the $20,000. The debtor also could produce no adequate records to substantiate his testimony.

In addition, the debtor has not adequately demonstrated that this transaction was conducted at arm's length. After the purported sale, the sold trucks bore the logo "All Star Shapiro Express Co., Inc." The debtor testified that while he did not countenance this logo, he had no recourse to prevent the use of his name. The record shows that a former employee of Shapiro Trucking & Warehouse, Clyde Rawlins, is president of All Star, that the debtor's attorney was All Star's incorporator, and that All Star conducted its business from the same premises of the debtor. In light of these facts, this court cannot believe the debtor's claim that he lacked recourse to have his name removed from these trucks if he in fact so desired.

The debtor insisted throughout his testimony that he had no knowledge of All Star's operations. However, upon questions by this court, the debtor was able to enlighten the record as to the nature of All Star's trucking business. The aggregate of the debtor's testimony regarding this sale of trucks manifests a concealment of this business transaction and the subject assets from the trustee and creditors.

10) The debtor has failed to satisfactorily account for numerous checks weekly drawn on the account of Shapiro Trucking & Warehouse in the amount of $500.00 payable to cash. The debtor's consistent practice of drawing such checks on a weekly basis is not an adequate substitute for substantive proof that would clearly indicate the manner in which these funds were disbursed.

The debtor contends that these funds were used in business to pay for toll and road expenses, as well as to pay bribes to dock workers that would expedite the debtor's pier pickups. The debtor produced toll receipts, the aggregate of which amounts to considerably less than $500 per week. The debtor cannot explain satisfactorily the balance of the $500 per week through the undocumented practice of paying illegal bribes. Despite testimony that such payments are common industry practice, this court will not in any way condone illegal activity.

11) The debtor has failed to satisfactorily account for a myriad of checks drawn on the account of Shapiro Trucking & Warehouse by the debtor in various amounts payable to cash. As discussed above, the invoices produced by the debtor do not verify or correlate to the payments that the debtor contends they represent. Rather, these records amount to an unreliable remake of the debtor's finances, custom-made for the purposes of this hearing.

12) The debtor has failed to satisfactorily explain the disposition of proceeds from the 1984 sale of a boat owned either by the debtor personally or by M. Shapiro Express Co. The debtor could not even definitively testify as to the title owner of his boat.

(C) The debtor has knowingly and fraudulently made false oaths or accounts that are pertinent to the discovery of his assets and past transactions, as proscribed by 11 U.S.C. § 727(a)(4)(A):

13) The debtor knowingly and purposely excluded certain creditors from Schedule A-3 of his Statement of Liabilities, which clearly requires the debtor to list *all* creditors having unsecured claims against the debtor without priority. The debtor testified that he only scheduled those creditors who he felt exercised excessive pressure on him.

14) The debtor's answers to Schedule B-2 of his statement of property, which clearly requires the debtor to categorically list all of his personal property, are contrapositive to his testimony given in open court:

a) The debtor testified that he does not need to carry cash on his person because

he rarely uses such cash. This testimony contradicts the debtor's scheduled answer of "$50.00" to Schedule B–2, category A—"cash on hand," and raises significant doubts as to the credibility of both the debtor's testimony and the written answer.

b) The debtor's contention that he owns no "household goods, supplies and furnishings" is incredulous in light of the fact that he is the primary wage-earner of his family.

c) The debtor failed to schedule his personal wearing apparel, jewelry and sports equipment.

d) The debtor's failure to schedule the machinery, fixtures, equipment and supplies he used in business is unwarranted and indefensible. It is inconceivable that the debtor uses no such equipment in his business.

e) The debtor failed to schedule his life insurance policy.

f) The debtor did not reveal his equitable interests in bank accounts maintained at National Westminster Bank and European American Bank, to which the debtor had powers of attorney, and in certain bank accounts of the debtor's children for which the debtor served as custodian.

15) The debtor's completed "Schedule of Current Income and Current Expenditures" does not constitute a true and accurate representation of the debtor's financial condition in that it fails to account for personal and family expenses paid for out of corporate bank accounts.

16) For the reasons enumerated below, the debtor's completed "Statement of Financial Affairs for Debtor Engaged in Business" is materially false and misrepresents the debtor's actual business affairs:

a) The debtor's testimony is inapposite to his written declaration that his books of account and records during the six years preceding this Chapter 7 filing were kept by and in the possession of the accounting firm of Rogoff & Co., P.C. The debtor consistently asserted before this court that Rogoff & Co. kept no records of the debtor

or his corporations, and merely assisted the debtor in the filing of his tax returns.

b) The debtor did not disclose the above-noted bank accounts to which the debtor maintained powers of attorney.

c) The debtor failed to indicate that he had opened and maintained a safe deposit box at a branch of National Westminster Bank within the two years prior to his filing.

d) The debtor did not schedule his position as custodian to certain bank accounts maintained for the benefit of his three children.

17) The debtor's alleged reliance on his attorney's and accountant's advice does not abrogate his responsibility to accurately provide to the best of his ability the fundamental information sought by the trustee.

18) The aggregate of the debtor's misstatements and omissions of fact demonstrates a pattern of reckless and cavalier disregard for the truth, with the intent of concealing the requisite financial information from the trustee and creditors.

CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject and the persons of this case as a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2. The plaintiff, as required by 11 U.S.C. § 727(a)(3), has sustained its burden of proof by clear and convincing evidence that the debtor has failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained. The debtor's failure to keep such records has not been justified under all of the circumstances of this case.

3. The plaintiff, as required by 11 U.S.C. § 727(a)(4)(A), has sustained its burden of proof by clear and convincing evidence that the debtor knowingly and fraudulently, in or in connection with this case, made numerous false oaths or accounts in his bankruptcy petition and in his testimony before this court.

4. The plaintiff, as required by 11 U.S.C. § 727(a)(5), has sustained his burden of proof by clear and convincing evidence that the debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities.

Accordingly, the debtor is denied a discharge in bankruptcy.

SETTLE ORDER.