820 F.2d 1220
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Tommy William THOMAS; Marie Thomas, Debtors.
LOWE'S OF VIRGINIA, INC.; Dominion Bank, National
Association; James Thomas Hicks; Charles B.
Moses; Bailey Lumber Company, Plaintiff-Appellee
v.
Tommy William THOMAS; Marie Thomas, Defendant-Appellant.
 No. 86-3560.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 27, 1987.
Decided June 3, 1987.
 
 Before WINTER, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 Richard A. Money; Lowe & Money, P.C., on brief, for appellant.
 No brief for appellee filed.
 PER CURIAM:
 
 
 1
 Tommy Thomas, owner of a construction company, filed for bankruptcy under 11 U.S.C. Sec. 701 et seq. (Chapter 7). Several creditors claimed that Thomas should be denied a discharge because he did not account for $30,000 received from Dominion Bank as partial payment on a construction project. The bankruptcy judge found that Thomas had provided a satisfactory explanation. The district court, however, denied a discharge, essentially because Thomas did not provide detailed records of how he spent the $30,000. Although a debtor risks the denial of a discharge whenever he fails to produce valid business records, the bankruptcy court was not clearly erroneous in finding that Thomas had provided an adequate explanation. Consequently, we reverse the district court and remand with directions to dismiss the creditors' complaint.
 
 I.
 
 2
 Thomas established a small construction business in Marion, Virginia in 1981. He possessed scant experience in the building industry. In 1983, Thomas agreed to build a house for Charles Moses, who obtained construction financing through Dominion Bank. During the construction, Thomas received two equal payments of $15,000 from Dominion Bank, for a total of $30,000. Before he received these advances, Thomas signed a waiver of mechanics liens, which stated that he had paid all the suppliers and laborers connected with the project. Thomas, however, had not paid several of the trade creditors for materials used in the Moses house. One creditor, Bailey Lumber, subsequently filed a mechanics lien against the Moses property. The recording of this lien ultimately forced Thomas and his wife Marie to file for bankruptcy.
 
 
 3
 During the bankruptcy proceeding, several creditors moved to deny the entire discharge under 11 U.S.C. Sec. 727, but did not say which specific subsection supported a denial. The creditors also argued that, under 11 U.S.C. Sec. 523, their individual debts should not be discharged because Thomas received the $30,000 by fraudulently signing the Dominion Bank waiver of mechanics liens. The bankruptcy court dismissed the Sec. 523 claims, but allowed the creditors to file individual complaints under the same section within ten days. The creditors failed to file such claims. Thus, the sole issue at the bankruptcy hearing was whether the debtor was entitled to a discharge under Sec. 727.
 
 
 4
 At the hearing, the creditors for the first time offered specific objections to the discharge. Citing Sec. 727(a)(5), they claimed that Thomas should not be discharged because he "has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet (his) liabilities." The creditors basically argued that Thomas failed to explain what happened to the $30,000 from Dominion Bank. They apparently thought Thomas still had this money because they also claimed that he was fraudulently concealing assets from the estate in violation of Sec. 727(a)(2). Finally, relying on Sec. 727(a)(4), the creditors argued that the debtor should not be discharged because he made a false statement to Dominion Bank in obtaining the $30,000.
 
 
 5
 The bankruptcy and district courts quickly disposed of the Sec. 727(a)(2) fraudulent concealment claim, finding that Thomas had not concealed any assets. The district court also found that Thomas did not violate Sec. 727(a)(4) because his statement to Dominion Bank was not made in connection with the bankruptcy case. The two lower courts disagreed on the Sec. 727(a)(5) claim, however. The bankruptcy court concluded that Thomas had offered a satisfactory explanation, even though he did not refer to the business records he brought to the bankruptcy hearing. The district court disagreed and denied a discharge because Thomas failed to support his explanation with business records. Thomas appealed.
 
 II.
 
 6
 The issue on appeal is whether the bankruptcy court erred in finding that Thomas had satisfactorily explained the loss of the $30,000. In virtually all cases, the debtor's explanation should be substantiated by financial records. The bankruptcy court, however, is not precluded by law from accepting a debtor's explanation even if the debtor does not produce his records. In this case, the bankruptcy court was not clearly erroneous in crediting the debtor's explanation.
 
 
 7
 According to Sec. 727(a)(5), a debtor receives a discharge unless a creditor can prove that he did not satisfactorily explain the loss of any assets. The underlying purpose of Sec. 727(a)(5) is to deny the benefits of a discharge to any debtor who fraudulently conceals assets from his creditors. In re Shapiro, 59 B.R. 844, 847 (Bkrtcy., E.D.N.Y.1986). Under Sec. 727(a)(5), the creditor must first show that assets have been lost. Then, to receive a discharge, the debtor must "convince the judge" that he was not hiding any assets. In re Chalik, 748 F.2d 616, 619 (11th Cir.1984). To convince the judge, the debtor's explanation "must consist of more than ... a vague, indefinite, and uncorroborated hodgepodge of financial transactions." In re Martin, 698 F.2d 883, 886 (7th Cir.1983).
 
 
 8
 This requirement is hardly burdensome; the debtor must simply produce credible business records to show how he ended up in bankruptcy. Although the burden is not difficult, the production of business records is important. Without a valid record of his financial transactions, the debtor is asking the court and creditors to believe his unverified story. A debtor who fails to produce records runs a substantial risk that a bankruptcy judge may deny his petition for discharge. In re Chalik, 748 F.2d at 619.
 
 
 9
 Although the debtor's records will provide the most convincing explanation of his financial problems, they are not an absolute prerequisite to a discharge. Section 727(a)(5) does not require a "record explanation"; it requires a "satisfactory explanation." The debtor meets this burden if he convinces the judge of his good faith and business-like conduct. In re Shapiro, 59 B.R. 844, 848 (Bkrtcy., E.D.N.Y.1986); In re Frank, 14 B.R. 166, 168 (Bkrtcy., S.D.Fla.1981). In essence, the debtor's explanation is satisfactory if it is reasonable and credible. In re Lineberry, 55 B.R. 510, 513 (Bkrtcy, W.D.Kent.1985); In re Hendren, 51 B.R. 781, 788 (Bkrtcy., E.D.Tenn.1985).
 
 
 10
 Whether "a debtor satisfactorily explains a loss of assets is a question of fact." In re Chalik, 748 F.2d at 619. The bankruptcy judge is in the best position to determine when an explanation suffices. "The bankruptcy judge's assessments of credibility ... are based upon personal observation and evaluation of the witnesses which are impossible for us to replicate on appeal." In re Martin, 698 F.2d at 886. Thus, the bankruptcy court's decision must be upheld unless it is clearly erroneous. In re Garfinkle, 672 F.2d 1340, 1344 (11th Cir.1984).
 
 
 11
 The bankruptcy court was not clearly erroneous in believing the debtor's explanation of what happened to the $30,000. According to the testimony of Moses, the debtor gave him $8,000 of the initial $15,000 payment so that Moses could buy the land for his house. Thomas testified that he used the balance to pay his labor costs and concrete suppliers in an attempt to finish the Moses job and keep his business solvent.
 
 
 12
 The debtor's testimony is plausible. The creditors never produced any evidence that Thomas kept a portion of the $30,000 for his personal use, and the bankruptcy court noted that the only withdrawals Thomas "ever made from the business were for necessary living expenses for himself and his family." Thomas was apparently always on the edge of insolvency, having lost money in three of four years and turning a profit of only $2,000 in 1982. The business began to flounder when termite damage caused a loss of $18,000 on a home renovation project. This loss forced Thomas to use payments from his present construction projects to pay for materials used in previous jobs. Of course, this practice eventually caught up with Thomas and he was unable to pay several trade creditors for the Moses materials. Bailey Lumber effectively put an end to the business by filing a mechanics lien against the Moses property.
 
 
 13
 This case does not reveal any evidence of the type of debtor misbehavior that has motivated other courts to deny a discharge under 11 U.S.C. Sec. 727(a)(5). For example, in In re Dolin, 799 F.2d 251 (6th Cir.1986), the debtor was denied a discharge when he tried to blame his drug and gambling addictions for the unsubstantiated loss of over $600,000. The debtor in In re Martin, 698 F.2d 883 (7th Cir.1983), tried to hide $15,000 from his creditors by giving it to his father to use as a downpayment on a condominium that, while in the father's name, was to be used by the debtor. Finally, In re Delancey, 58 B.R. 762 (Bkrtcy.S.D.N.Y.1986), involved a debtor who claimed that he sold $400,000 worth of furs, jewelry, appliances, pianoes, and art work for less than $100,000 and then could not explain where the proceeds went. In these cases, the courts found that the debtor's concealment, falsification, or failure to keep financial records under 11 U.S.C. Sec. 727(a)(3) would provide an alternate ground for denial of the discharge.
 
 
 14
 In contrast to these egregious examples, the bankruptcy judge found that this case involved a "classic example of a construction business going broke because of a few unwise contracts." Although Thomas should have explained his financial troubles with credible business records, the bankruptcy judge's decision to believe his explanation is not clearly erroneous.
 
 The judgment of the district court is
 
 15
 REVERSED.